Samuel L. Young v. Benjamin F. Merkel et al., Appellants.

*Contract—Attorney at law—Counsel fees—Charge of court.*

In an action by an attorney at law to recover counsel fees, it appeared that defendants had bought land from a person who had employed plaintiff in an ejectment in which the land sold was in controversy. After the sale plaintiff acted with defendants' attorney in securing the discharge of a rule for a new trial in the ejectment, and a final settlement of the title by judgment. Plaintiff claimed to recover compensation for all of his services during the ejectment proceedings. Defendants averred that they had employed him for a small sum simply to aid in securing the discharge of the rule for a new trial. The trial judge in his charge laid particular stress on the peculiar fitness of plaintiff owing to his previous experience in the case, without alluding to the fact that he represented defendants' vendor as well as defendants. He also conveyed the impression to the jury that in his opinion the contract by defendants could not have been made, grouping together all of the circumstances which favored this view, without referring to the circumstances in the evidence sustaining the existence of the contract. *Held,* that the charge was misleading, and that the judgment for plaintiff should be reversed, and a new trial awarded.

Argued Feb. 28, 1894. Appeal, No. 328, Jan. T., 1894, by defendants, from judgment of C. P. Berks Co., May T., 1892,

No. 98, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and DEAN, JJ. Reversed.

Assumpsit for counsel fees. Before ENDLICH, J.

The facts appear by the charge of the court below, and the opinion. of the Supreme Court.

The court charged as follows :

" The plaintiff in this case is a practicing member of the bar. His suit is brought for the purpose of recovering from the defendants a sum of money representing a reasonable compensation for services rendered by the plaintiff, as an attorney at law, to the defendants, in certain litigation concerning land owned by the defendants. You must bear in mind how this litigation arose and what was the relation of the plaintiff and the defendants to it. Some time early in the '60s the land now owned by defendants was in the possession of one by the name of Regan. The title to it was claimed, however, by another person, one Ludwig, and some others whose names I have forgotten. There were two ejectment suits, each being successful in one, Regan being successful in the second one. In order, finally, to determine the controversy and settle the title, Ludwig, in 1866, brought the third and last possible ejectment suit against Regan. Regan retained Mr. Young as his counsel. As such he tried the case for Regan in 1873 and won it. An application for a new trial was, however, made, which, owing to the elevation to the Supreme Bench of Judge WOODWARD, who had tried the case, was not at once disposed of. Subsequently various other reasons delayed the disposition of the motion for a new trial. In the meantime Regan died, and also the father of the defendants, who had purchased this property, together with other property, from Regan. At the time of that purchase, by reason of the doubtfulness of the title of this property, the purchaser, the father of the defendants, had not paid the full consideration money to Regan, but had given Regan a bond, under which he was liable, finally, to pay only for so much of the land as should in the event of the controversy be adjudged to be his by a good title. Now, gentlemen, under this arrangement, whilst it was, of course, to Regan's interest to bring the litigation to a close, it was entirely competent for the purchaser, the father of these defendants, and

after his death, it was entirely competent for the defendants
themselves to intervene in this litigation, and to be represented
by counsel in it, and actively to push it.   Accordingly, in 1883,
it is testified that they did employ Mr. Green to look after
their interests, and it is an undisputed fact in this case, as I
understand it, that subsequently, in 1886, they also employed
Mr. Young for the same purpose.   Neither is it disputed that
Mr. Young acted for their interest and to their advantage, that
he, to say the least, contributed to their final success in the
litigation by aiding in procuring the refusal of a new trial and
later the denial of the application for a reopening of the matter.
You have heard just what his services were.   The question is,
what is he entitled to in payment of them?   On this question,
gentlemen, the defendants contend that, before and at the time
of employing Mr. Young, they made a contract with him, by
which he was to receive, in full of his services, whatever they
might be, the sum of $20.   It is undisputed that they have
paid him, before this suit was brought, $15, and it is a fact
that, before this trial, they paid into court for him $5 more,
together with costs of the suit.

"I charge you: If the jury believe from the testimony of
Mr. Green, Mr. Weiss and Mr. Huy that a contract was entered
into with Mr. Young, the plaintiff, that he was to assist Mr.
Green in disposing of the rule for a new trial in the Ludwig
and Regan ejectment suit, and that he was to receive for his
services the sum of $20—$10 immediately and $10 when the
case should be finished, and that said sum of $20 has been
fully paid, including the $5.00 and interest thereon, viz: $1.50
with costs up to the time of trial, paid into court on motion of
defendants' counsel, it will be the duty of the jury to find a
verdict in favor of the defendants.

" On the other hand, the plaintiff denies any contract what-
ever on the subject of his fees, much less that he ever agreed
to give his services to the defendants from 1886 to the conclu-
sion of the litigation for the sum of $20.

" Now, gentlemen, what is the truth of this matter?   That
is the first question that you will have to determine, and you
will have to determine it in the light of all that has been ex-
pressly testified by the witnesses on both sides, as to what was
said and done between the plaintiff and the defendants' coun

sel, and between the plaintiff and the defendants themselves, and also in the light of the other facts and circumstances appearing in evidence capable of pointing to a probability one way or the other. [The question, gentlemen, is one of the preponderance of the evidence. On which side, in your opinion, is the weight of the evidence? · What does the testimony of the witnesses prove? And what do the circumstances proven indicate? Is it likely, considering the value of the property involved in the litigation, of the long standing of the plaintiff as a practitioner at the bar, of the questions to be argued in this motion for a new trial and in resisting the application for a re-opening of the matter, of the volume of the matters to be re-examined, of the peculiar facilities that the plaintiff possessed therefor, in view of these and all other circumstances as shown to you bearing on the point and that you may find in the evidence, is it likely that such a contract was made between these people? The memorandum on the back of the receipt of February 20, 1886, is not a contract, it was only admitted as corroborating the recollection and claim of the defendants as to what they claim to be the true state of facts.] [3] Yet, as I told you, if the preponderance of the evidence, as you find it to be, leads you to believe in the existence of such a contract, then that is the end of this case.

"If, however, no contract has been proven limiting the fee to $20, then, inasmuch as the contract employing Mr. Young is unquestioned in this case, the liability to pay what is a reasonable compensation must follow, of course.

"[Now, gentlemen, what is a reasonable compensation in this case? In determining that you will consider what has been testified to here by gentlemen of the bar who have been called for that very purpose. You will remember Mr. Snyder testified that a compensation of $200 to $250 would be a reasonable one for the services which Mr. Young rendered to these defendants from February 20, 1886, down to the close of that litigation; Mr. Yundt testified that for the same services $250 would be a fair charge; and Mr. Montgomery testified that $250 for the same services would be a moderate charge. It is right and proper, and you are bound to consider that testimony, but in addition to that you must bring your own judgment to bear on this matter.] [4]

" [You must remember the nature of this litigation, the nature of the questions involved, the nature of the services that Mr. Young thought necessary and proper to perform, what was the extent of the labor he was obliged to perform to be prepared for the argument of this case, and also remember what peculiar facilities and advantages Mr. Young had perhaps above any other member of the bar in coping with these questions, what knowledge he had acquired before, when in the employ of another person, that would enable him to see through this case and understand and make clear that which might perhaps be cloudy to a person who had not acquired the knowledge he possessed.  All those matters you must consider and you must fix an amount that will fairly compensate him for his services, under all these circumstances, remembering that the litigation finally resulted in a victory for the defendants.] " [5]

Verdict and judgment for plaintiff for $235.

*Errors assigned* were (1, 2) admission of evidence not excepted to in the court below ; (3–5) instructions ; quoting questions and answers and instructions ; (6) the charge was inadequate ; (7) there was no sufficient evidence to sustain the verdict.

*Herbert R. Green*, *A. G. Green* with him, for appellants.— The judge should submit the facts without expressing his opinion thereon, and without making an argument in favor of either side : Leibig v. Steiner, 94 Pa. 472 ; Egbert v. Payne, 99 Pa. 239.

Where the general tenor of the charge inadequately presents the case to the jury and manifestly misleads them as to the true points, to the prejudice of one of the parties, the Supreme Court will reverse : Youngman v. Miller, 98 Pa. 196 ; Goersen v. Com., 99 Pa. 388 ; Canal Co. v. Harris, 101 Pa. 87 ; Coxe v. Deringer, 82 Pa. 258 ; Ditmars v. Com., 47 Pa. 335 ; Burke v. Maxwell's Adm'rs, 81 Pa. 139 ; Garrett v. Gonter, 42 Pa. 143.

*Wm. G. Young*, *E. B. Wiegand* with him, for appellee.— A reference to the entire charge shows that the case was fairly submitted : Kilpatrick v. Com., 31 Pa. 198 ; Johnston v. Com., 85 Pa. 54 ; Horton v. Coal Co., 2 Penny. 25 ; Fredericks v.

R. R., 157 Pa. 103; Krepps v. Carlisle, 157 Pa. 358; Moll v. Zimmerman, 1 Woodw. Dec. 501.

OPINION BY MR. JUSTICE McCOLLUM, Oct. 1, 1894:

This suit was brought to recover compensation for profes- sional services rendered in an action of ejectment in which Mendon F. Ludwig et al. were plaintiffs, and George Regan was defendant. The plaintiff herein was employed by Regan as early as 1868, and it appears that in pursuance of his employ- ment he directed, and was present at, the making of surveys of the land in dispute, and assisted his associate in the prepara- tion and trial of the case which resulted in a verdict for the defendant on the 4th of September, 1873. A rule for a new trial having been granted he prepared an argument against it, but for reasons which need not be stated here it was not dis- charged until April, 1889. As often as the rule was on the argument list he went over and revised his previous prepara- tion to resist it, so that it is reasonable to suppose that when the time came for arguing it he was well equipped for the per- formance of that duty. In 1883 or 1884, the defendants herein having previously purchased the land of Regan on terms which enabled them to retain a portion of the purchase money until he established his title, and being desirous of having the rule discharged, employed counsel to look after it, and on his sug- gestion they associated the present plaintiff with him in 1886. They thus became liable to the plaintiff for his services, after that date, in connection with the business for which he was employed. They say they had a contract with him by which they agreed to pay and he agreed to accept twenty dollars as full compensation for assisting their other counsel in getting the rule discharged. He says there was no agreement between him and them in regard to his compensation, and that he ought and is entitled to have from them what his services are worth. Two of the defendants, and the counsel with whom the plaintiff was associated in rendering the services sued for, testified plainly and positively that there was such a contract, and the plaintiff testified as positively and plainly that there was not. There was no attempt by either party to impeach these witnesses, and their veracity is unquestioned, save by the contradiction in their testimony, and this may be attributed to an honest dif ference in recollection.

A .peculiar feature of the case is that while the learned court very properly held that the recovery, if any, must be limited to the value of the service rendered by the plaintiff after his employment by the defendants, the trial was so conducted that it resulted in a verdict in his favor for the exact sum he claimed, to wit: one half of his estimate of the value of the services he rendered in the case after April, 1873. It is quite evident that this action was brought on the theory that as the defendants bought the land of Regan they ought to pay one half of the expense of defending his title to it. This thought pervades the whole of the plaintiff's testimony and is frequently and plainly expressed therein. But it has neither a legal, nor an equitable basis. As we have seen, Regan was bound to maintain his title in order to get the purchase money. He employed the plaintiff and other counsel to defend it, and their services in the ejectment, from the institution of it to final judgment therein, were properly chargeable to him. That the plaintiff considered it to be his duty to Regan to continue in the case until it was finally determined is evidenced by his preparation of an argument against a new trial, by his repeated revisions of it, and his unavailing efforts to get the rule discharged during thirteen years immediately preceding his employment by the defendants. It is further shown by his declaration or statement in 1884 that the case was still in his hands as counsel for Regan. In short it is beyond question that for his services in the ejectment prior to 1886 these defendants are not liable. What then were his services in the case after that time? Were they performed under a contract? If not, what was their value? These were questions to be answered by the jury upon a dispassionate consideration of all the testimony. To assist them in the performance of their duty the court was required to instruct them in the law applicable to the case, and it was proper for it to call their attention to the evidence on each side and to point out its relevancy to and its bearing on the issues. If, however, it attempted to review the evidence, it was bound to do so impartially and adequately. The principal complaint of the appellants is that the charge was in the nature of an argument for the plaintiff, and was partial, inadequate and misleading. Is this complaint well founded? In support of it they direct our attention to the charge as a whole, and particularly to the por-

tions of it which constitute the. third, fourth and fifth specifica-
tions of error.

It is observable that throughout the charge particular stress
was laid by the court on the alleged peculiar fitness of the plain-
tiff, grounded upon the information he acquired in the service
and at the expense of Regan, for the work he was engaged by
the defendants to assist their counsel in performing, and that
there was no allusion in it to the fact that in rendering this as-
sistance he represented Regan as well as the defendants.    In
that portion of the charge which forms the subject of complaint
in the third specification there was a manifest purpose to throw
doubt upon and discredit the defendants' testimony in relation
to a contract and to convey to the jury the impression that
in the opinion of the court it was quite unlikely that such a
contract was made.    In it, all the circumstances, remote and
proximate, which the learned court apparently supposed were
inconsistent with the defendant's claim that there was a con-
tract which fixed the compensation of the plaintiff for his ser-
vices after his employment by them in 1886, were carefully
grouped and used in execution of such purpose, but there was
no mention of the circumstances in harmony with and corrob-
orative of their claim, unless the slight reference to the mem-
orandum on the back of the plaintiff's receipt is regarded as
such.    In that portion of the charge complained of in the fifth
specification there was a substantial repetition of the circum-
stances mentioned in the third, and the jury were told that in
considering them as affecting compensation they should re-
member " that the litigation finally resulted in a victory for the
defendants," but they were not reminded that it was a victory
which was mainly due to the services rendered in the case prior
to 1886, or that. the principal benefits arising from it belonged
to the estate of the defendants' vendor.    But we need not pur-
sue this subject further.    The result of our examination of the
case is that we are unanimously of opinion that the appellants
have just cause to complain of the charge.

As the questions and answers complained of in the first and
second specifications were not excepted to in the court below
they will not be considered here.  There is no error in the in-
struction which is the subject of the fourth specification and we
cannot sustain the seventh.    The third, fifth and sixth specifi-
cations are sustained and the others are overruled.

The plaintiff should have from the defendants fair and just compensation for his services in pursuance of their employment of him. In ascertaining the compensation, the jury should consider the nature and amount of the services and all the circumstances which may legitimately affect it, but the plaintiff should not be permitted to recover from the defendants directly, or indirectly, for any services he rendered in the ejectment previous to 1886.

Judgment reversed and venire facias de novo awarded.