HOME INS. CO., NEW YORK, v. CON-
SOLIDATED BUS LINES, Inc.

No. 5999.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 5, 1950.

Decided Jan. 28, 1950.

Frederick T. Kingdon, Mullins, W. Va. (Kingdon & Kingdon, Millins, W. Va. on brief), for Appellant.

Paul S. Hudgins and George Richardson, Jr., Bluefield, W. Va. (Richardson & Kemper, Bluefield, W. Va. on brief), for appellee.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and WARLICK, District Judge.

SOPER, Circuit Judge.

Home Insurance Company of New York filed suit, in equity, in the Circuit Court of Wyoming County, West Virginia, against the Consolidated Bus Lines, Inc., and George Richardson, Junior; and on petition of the defendants the cause was removed to the United States District Court for the Southern District of West Virginia and trial by jury was had against the bus company alone.

The suit arose out of a fire which occurred in Mullens, Wyoming County, West Virginia, at or about 8 A.M. on Sunday, February 1, 1948. The fire destroyed a building owned by Richardson and leased by him to the bus company which occupied one-third of the structure and sublet the remainder to the Atlantic and Pacific Tea Company. Subsequent to the fire the insurance company paid the loss of goods and fixtures amounting to $13,127.62 suffered by its insured, the A. & P., and proceeding on the principle of subrogation seeks reimbursement in this action from the bus company, alleging negligence in the maintenance and operation of the furnace and furnace room in the building. In pretrial conferences, by stipulations and admissions in pleadings, the relationship of landlord and tenant existing between the bus company and the A. & P.; the amount of loss sustained by the A. & P.; the insurance company's right to be subrogated to the right of its insured; and the fact that the bus company had sole and exclusive control of the furnace room which supplied heat to the entire building were agreed and are not now controverted; and the case proceeded to trial before court and jury.

The building was a one-story brick structure approximately 67' wide and 100' from front to rear. It had no basement and was floored entirely with concrete, and had a plaster-on-wood lath ceiling about 14' from the floor. The ceiling wood lath was nailed to wood rafters which were supported by steel bow-string trusses. The roof was made of wood boards nailed to 2 by 10" wood joists resting on the arch of the bow-string trusses; and was covered with asphalt-tar compound and tar paper.

The portion of the building occupied by the bus company consisted of a driveway for the loading and dispatching of buses, and a small ticket office and a waiting room. It was separated by a plaster wood-framed partition, which ran from front to rear of the building, from that portion occupied by the A. & P. The only opening in this partition was a small air-vent hole. The portion occupied by the A. & P. was divided by a partially open transverse wood-screen partition. The front section thus formed was used as a storage sales area and the rear as a storage room. This storage area completely surrounded a small furnace room 8 X 10' located in the corner of the building.

The furnace room could be entered only through a door opening into the back alley. It contained a coal-fired steam furnace with a smokestack which ran to a brick flue in the wall. The furnace was in good condition with the exception that some of the grates needed replacement. The room was of cinder block construction with a concrete floor and was 14' high. A coal bin, composed of metal sheeting, was located in close proximity to the furnace and, in order to accommodate a recent delivery of coal, two boards, 2 by 6 or 2 x 10", had been laid across the top of the bin. These two boards were supported by 2 by 4" boards which had been placed upright in the coal bin. The furnace and the bin were approximately 5 to 6' high.

The theory of the plaintiff was that the bus company had negligently allowed an appreciable amount of inflammable material to accumulate around the furnace which was defective insofar as the grate was concerned, and that the debris was ignited

from the furnace, resulting in the fire which caused the destruction of the building. The case was submitted to the jury upon special interrogatories framed by the judge as follows: (1) Was the fire which destroyed the building started by fire or heat from the furnace?; and (2) Was any agent or agents of defendant guilty of negligence which proximately caused the start of the destructive fire? The jury were instructed that if their answer to the first interrogatory was in the negative, they need not consider the second. The jury answered the first interrogatory in the negative and upon their verdict, judgment was entered for the defendant.

The gist of the appellant's appeal is that the court erred in its ruling in two important respects, namely: (1) in excluding certain testimony that James F. Stone, the manager of the building for the bus company, had made statements tending to show that he had visited the furnace room and removed certain embers from the fire on the morning of the catastrophe, and that in his opinion the fire originated in the furnace room; and (2) in emphasizing the testimony in the case favorable to the defendant and failing to stress the testimony favorable to the plaintiff in the charge to the jury.

The exclusion of the testimony of the manager had an important bearing in the case because a crucial question at issue, which was proposed to the jury in the first interrogatory, was whether the fire originated in the furnace room which was under the defendant's exclusive control. The manager was called as an adverse witness by the plaintiff and testified that although it was a very cold morning and that only a little fire remained in the furnace when he closed the place at approximately 11 P.M. the previous night, he did not go to the furnace room to build up the fire after he arrived at an early hour the next morning. The plaintiff then offered to prove by two witnesses that the manager told them, either on the afternoon of the day of the fire after it was put out or shortly thereafter, that he removed coals from the fire in the early morning, and

that he believed that the fire originated in the furnace room.

The judge rejected this testimony, and in our opinion this ruling was correct. The statements were made so long after the incident to which they related that they could not be considered either as a part of the res gestae or as statements made by an agent within the scope of his authority and in the performance of his duties. While the statements might have been admitted to show that the plaintiff had been taken by surprise, they could not be received as evidence of the truth of the facts therein recited. Such evidence is admissible only to remove the damage that is caused by the surprise and to relieve the party calling the witness from being bound by his unexpected testimony. This rule is followed by the courts of West Virginia. See, Reynolds v. W. T. Grant Co., 117 W. Va. 615, 186 S.E. 603. See also, 58 Am.Jur., Witnesses, § 799. We find nothing at variance thereto in Karr v. B. & O. R. Co., 76 W. Va. 526, 86 S.E. 43, and Wm. F. Mosser Co. v. Payne, 92 W. Va. 41, 114 S.E. 365.

 Bearing this rule in mind, it is clear that the charge of the judge on this phase of the case was not prejudicial to the plaintiff. The judge said: "There was some evidence introduced in the case which was introduced for a special purpose. You remember, right at the end of the case, two witnesses were put on as adverse witnesses by the plaintiff, and they were asked some questions; and it was shown that prior to the trial they had made some statements that went beyond what they were willing to say, or did say, on the trial; and those questions and answers were read to them, and they were asked if they said that, and so forth. Now those questions and answers were read are not part of the evidence, and you cannot so consider it. It is only the evidence given on the witness stand by the witness himself here and now, that you can consider; and the only purpose of showing him, or reading him those questions and answers was to contradict him. He was an adverse witness, and the plaintiff thought that they had statements that he had made that varied from

what he said here; that that might weaken his testimony here; and that is the only reason why those questions were asked and answered. I say that for this reason: that you heard from those questions that one or more of those witnesses had said certain things outside of the trial; had said, for example, that there was rubbish on the floor of the furnace room. They had said that there was an accumulation there that constituted a fire hazard; but you can't consider that. They didn't say that under oath; therefore it is not evidence in this case; and when you come to consider your verdict the only thing you can take into consideration with reference to any wood or inflammable articles in that furnace room is the testimony of that one box or crate that was thrown up on the coal by this janitor, and the $2 \times 4$s that were put in to hold the coal, and $2 \times 10$ or $2 \times 6$, whichever it may be, that was put in be-hind them to help furnish the bracing. That, so far as this case is concerned, is the only wood that was in that furnace room; and there is no evidence that there was any rubbish, or any splinters, any rags, kindling or any thing of that sort; just the coalpile and those supports, those wooden supports, and the wooden box."

■ However, we do not think that it can be said that the charge as a whole could have been heard without prejudice to the interest of the plaintiff. The plain-tiff's chief endeavor was put forth to show that the fire originated in the small fur-nace roof $8' \times 10'$ which the defendant maintained, and was caused by the defend-ant's carelessness in firing the furnace with a defective grate and allowing inflam-mable material to accumulate in the room near the furnace. To this end it offered testimony tending to prove that the grate was in such bad repair that the manager had ordered a new one which he proposed to put in place himself on the morning of the fire, and that on this account he had left less than the usual fire in the grate when he closed the place on Saturday night; that he arrived at the building early the next morning when the temperature was at zero, from which it might be inferred that the manager would fire the furnace for his own comfort and that of the traveling public using the bus station. There was also testimony of a fireman employed at the post office in the next block to the bus station that when he went to work in the neighborhood of 6 a.m. on the morning of the fire he noticed an unusual quantity of black smoke coming from the back of the building near the furnace room and roll-ing toward the front as if the furnace was being fired and that a little later he went to the bus station and notified the manager who immediately ran around to the alley and opened the door of the furnace room whereupon fire and smoke rushed out. There was also evidence that at 3:30 P.M., after the building had been destroyed, there were still glowing coals in the grate in the furnace, suggesting the inference that the furnace had been fired since the night before. Morever, there was evi-dence to show that the janitor had placed a number of wooden packing boxes on top of the coal pile in the furnace room and not only one box, as the judge told the jury, and that wooden supports had been added to the coal bin to increase its capacity; that the crates and wooden supports had been consumed in the flames and that dur-ing the conflagration fire was seen on the floor and in the ceiling of the fire room.

The defendant's manager and janitor were called as witnesses by the plaintiff, and the defendant called amongst others a witness by the name of Tutwiler. He was District Manager of the bus company and did not arrive at the building until three hours after the fire had started and after the building had been destroyed. He testi-fied in substance that on previous inspec-tions the only debris he had found in the furnace roof consisted of a box on the top of the coal bin and that after the fire there was only one crate on top of the bin which had only been partially consumed, and that there was a mixture of coal and wood ashes on top of the coal bin subsequent to the fire and that the top layer of the coal in the bin was slightly burned.

In respect to this evidence substantially all that was said by the District Judge in his charge is contained in the following

passage which follows immediately the portion of the charge hereinbefore set out.

"Now it is from that evidence that you are to draw whatever inferences you think are logical about how this fire started; that plus the evidence of those people who first saw the fire, and the moving picture which you saw—you take all those into consideration and determine what inferences to draw. There was fire in the furnace. That fire, however, was a light fire. It had been put there the night before. It had been left there about nine o'clock, I think the witnesses said, the previous night. Whether it caused much heat there; whether it caused enough heat to do any damage at all; are matters of inference for the jury; but you do have to consider this testimony, if you believe it to be true, of Mr. Tutwiler, who said that when he examined the furnace room there was only a slight burning on the top of the coalpile; the wooden standards and the wooden crosspiece were not burned; the crate was burned, but not entirely destroyed; some of it was left; and that there was no fire stains that he could observe on any of the walls of that furnace room. Then you must consider the fact that the furnace room itself did not have anything in it that was inflammable, except these wooden pieces I have told you about, and beaverboard ceiling, which was 14 feet above the concrete floor. * * *

"Now you have got to connect that fire (in the furnace) in some reasonable way with the fire that later occurred in the building; and as I see it, although what I think about it is not binding on you at all, you would have to believe that in some way that fire got out of the furnace and caused a blaze in that furnace room that would leap up 14 feet. Now 14 feet is as high as the square part of the window in this courtroom; the top square part of the window; top of the blind. Now that is a long way for a flame to leap up, either from these big timbers or from the box. It could not have been from the timbers, because the timbers were there when the fire was over; were not consumed; and that leaves only the box. It could not have

leaped up from the coal, because the coal was only burned a little on the surface; and a coalpile that is only burning on a very small bit of the surface does not send flames, as you know, nine feet into the air. Does a crate, a little goods box, send flame to that distance, nine feet? and if it did, would that flame last long enough to cause the ceiling to become ignited? Those are questions that the jury must ask themselves; and they can't arrive at a conclusion that this fire was started by the furnace, unless they can overcome those difficulties in connecting those various links in the chain. * * *

"Now remember that what I have said to you about the facts or inferences is just said for the purpose of helping you to reach proper conclusions, and is not binding on you at all."

It is obvious that the evidence upon which the plaintiff relied was but lightly touched upon in the charge, and that statements were included that did not set out the testimony with complete accuracy. For example, it was stated that the fire in the furnace was a little fire, and no notice was taken of the evidence that it was still burning at 3:30 P.M. in the afternoon. It was stated that only one crate or box had been placed on the coal pile although the defendant's janitor testified that he had placed several crates or boxes on the pile when he left for the night; and no notice was taken of the testimony that black smoke was seen flowing from the building in the neighborhood of the fire room early in the morning, and that during the conflagration fire was seen on the floor and in the ceiling of the furnace room. The contrast between the emphasis on Tutwiler's testimony and the silence with respect to matters on which the plaintiff relied is noteworthy.

It is of course not our purpose to suggest that the jury should have drawn the inferences favorable to the plaintiff's case upon which it insisted in argument, but at least they were worthy of mention when the court undertook to charge the jury upon the facts of the case. The rule in such

cases was set out in Pullman Co. v. Hall, 4 Cir., 46 F.2d 399, 404, as follows: "* * * The trial judge may, of course, express an opinion upon the facts; but he may not withdraw material evidence from the consideration of the jury; and it is reversible error to submit the evidence and theory of one party prominently and fully, as was done here, and not call attention to the main points of the opposite party's case. Weiss v. Bethlehem Iron Co., 3 Cir., 88 F. 23, 30; Hall v. Weare, 92 U.S. 728, 23 L.Ed. 500." See also Provident Life & Accident Ins. Co. v. Eaton, 4 Cir., 84 F.2d 528.

In Weiss v. Bethlehem Iron Co., 3 Cir., 88 F. 23, 30, it was said: "Instructions which, taken as a whole, are calculated to mislead the jury as to the character of the evidence necessary to prove the issue on one side, are erroneous. Rea v. State of Missouri, 17 Wall. 532, 543 [21 L.Ed. 707]. Reversible error exists if the general effect of a charge tends to withdraw from the consideration of the jury material evidence. Hall v. Weare, 92 U.S. 728, [23 L.Ed. 500] If an instruction fails to present with efficient distinction a material fact which may have a controlling effect, there is ground for reversal. Ayers v. Watson, 113 U.S. 594, 609, 5 S.Ct. 641, [28 L.Ed. 1093]. It is error for the court to submit the evidence and theory of one party prominently and fully to the jury and not call their attention to the main points of the opposite party's case. Pennsylvania Canal Co. v. Harris, 101 Pa. 80; Reichenback v. Ruddach, 127 Pa. 564, 595, 18 A. 432; Young v. Merkel, 163 Pa. 513, 520, 30 A. 196."

We do not overlook the fact that the judge clearly and fully instructed the jury that what he said about the facts of the case was not binding upon them; but in our opinion this instruction was insufficient under the circumstances to offset the great weight which the jury would naturally accord to the comments of the judge upon the evidence. The judgment will be reversed and the case remanded for a new trial.

Reversed and remanded.