# CHARLESTON.

## WILLIAM F. MOSSER COMPANY v. JOHN BARTON PAYNE, DIRECTOR GENERAL OF RAILROADS.

Submitted October 11, 1922.   Decided October 17, 1922.

1.  APPEAL AND ERROR—*General Appearance Waiver of Defect or Failure to Serve Writ of Error.*

    By inadvertence the writ of error in this case summoned John Barton Payne, Director General of Railroads, instead of James C. Davis, Federal Agent, designated in the record as Director General of Railroads, as agent, and who was substituted as defendant after suit was brought; but the process was served upon a depot agent of the railroad company. While the writ should have run against the substituted defendant, his subsequent appearance and filing of his brief on the merits of the case pursuant to the rules of the court in relation thereto, amounted to a general appearance and to a waiver of any defects in or want of service of process upon him, notwithstanding he gave notice in his brief of a motion to dismiss. (p. 42).

2.  EVIDENCE—*Admission of Claim Agent as to Loss or Failure to Deliver Goods Admissible on Question of Negligence.*

    In an action against a common carrier of goods for the loss thereof or failure to deliver them according to contract, the admissions of the claim agent to whom the matter of adjustment was committed, as to the facts of such loss or failure to deliver the commodity, evidenced as in this case by letters or correspondence, are admissible in evidence on the question of defendant's negligence and liability in a suit by the consignor to establish the same. (p. 45).

3.  CARRIERS—*Parties to Contract of Interstate Shipment Cannot Waive Terms, Including Limitation as Defense.*

    Parties to a contract of interstate shipment made pursuant to the Act to Regulate Commerce, can not waive its terms

by conduct or otherwise, including the two years and one day limitation as a defense to an action brought against it after that time, stipulated in the uniform bill of lading adopted by the carriers.   (p. 48).

4.   SAME—*Limitation in Bill of Lading as to Time to Bring Suit; Special Contract Not Affected by General Statute.*

Nor can such limitation as to time for bringing suit contained in such bill of lading, being the subject of special contract, be avoided by the shipper on the theory of unreasonableness; such provision, being the subject of special contract in the bill of lading, is not affected by the general statute of limitations, state or federal.   (p. 48).

Error to Circuit Court, Nicholas County.

Action by the William F. Mosser Company against James C. Davis, Director General of Railroads, as agent, etc., substituted for John Barton Payne.   Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Brown, Wolverton & Ayres,* for plaintiff in error.
*Alderson & Breckenridge,* for defendant in error.

MILLER, JUDGE:

Before this case was tried, James C. Davis, Director General of Railroads, as agent, was substituted as defendant in the place of John Barton Payne, retried, and pleas were then filed by him, on which issues were joined. Upon the conclusion of the evidence, defendant demurred thereto, and there was a conditional verdict of the jury subject to the determination by the court of the law applicable thereto.

The judgment complained of was that the law was for the defendant, and that plaintiff take nothing, and defendant recover his costs; and to review that judgment plaintiff was awarded this writ of error.

Upon the calling of the case for argument here, on October 10, 1922, the defendant interposed a motion to dismiss a notice in writing of which had been served upon the plaintiff on September 28, 1922, by delivering a copy thereof to

Wolverton, attorney in fact. The ground of the motion was that the writ of error summoned as defendant thereto John Barton Payne, Director General, while the judgment complained of was in favor of James C. Davis, Director General, as agent, and that Davis had not been served with appellate process. Should the motion prevail? We think it should not: First, for the reason that neither the suit nor the writ of error was against John Barton Payne as an individual, but against the director general of railroads. The general rule is of course that all parties to the record interested must be made parties to the appellate proceedings. Our statute, section 13, chapter 135 of the Code, supplemented by section 1, rule 2 of the court, requires this; and such is necessarily the rule everywhere; for every party in interest is entitled to be heard and to have his day in court, as well in the appellate court as in the court of original jurisdiction. Undoubtedly the process in this case should have run against the substituted defendant instead of the original defendant. The writ was served, however, not upon John Barton Payne, but upon N. Rexroad, a depot agent of the Baltimore & Ohio Railroad Company in Nicholas County, the return showing that neither the said John Barton Payne nor any other officer of the Baltimore & Ohio Railroad Company was found. But service was had upon the proper person, namely, the railroad agent, who represented the substituted director general, and not on the nominal defendant named in the writ. *Duty* v. *C. & O. Ry Co.*, 70 W. Va. 14, 18.

The judgment complained of in the petition was one in favor of James C. Davis, Director General, as agent. The error in the writ was in not naming him defendant thereto. Counsel for him appeared generally, not specially, for the purpose of taking exceptions to the writ, and filed his brief of argument on September 20, 1922, prior to the service of notice of his motion to dismiss. While the printed brief calls attention to the defect in the writ and moves to dismiss, counsel does not limit his appearance, but appeared for all purposes and filed his brief of argument thereon. We think there was a general appearance which cured all defects in

the writ; and the motion to dismiss should be overruled. A general appearance is a waiver of all defects in service of process. *Danser* v. *Mallonee,* 77 W. Va. 26.

The action was to recover damages for alleged breach of a contract of carriage. The declaration, in four counts, charged that in June, 1918, plaintiff delivered to defendant a certain quantity of hide fleshings at Richwood, W. Va., of the value of $1,546.60, consigned to the Pennsylvania Glue Company, at Springdale, Pennsylvania. The second count charged that the consignment was to have been delivered at Hammond, Indiana, in place of the designated point in Pennsylvania; and all counts charged that defendant had wholly neglected and refused to deliver the commodity, and claimed damages for the breach of the contract, in the amount of $2,000.00.

Besides the general issue defendant interposed four special pleas, the substance and effect of each of which is that the contract of carriage was represented by a bill of lading, known as the "uniform bill of lading," which was signed and accepted by the plaintiff as the contract of carriage, which among other things provided that should defendant, the director general of railroads, fail to make delivery of the goods, suit for such failure should be instituted only within two years and one day after reasonable time for delivery thereof had elapsed, and averring that the said director general had in fact failed to make delivery of the commodity according to consignment, and that the suit had not been instituted within the two years and one day after such reassonable time for delivery had elapsed, and that therefore the action was barred by the limitation in the contract. The filing of these pleas was objected to but overruled, and there was a general replication thereto, and issue was joined thereon. There was no special reply by plaintiff setting up waiver of the conditions of the contract pleaded.

On the trial the bill of lading referred to in defendant's special pleas was introduced in evidence by the plaintiff and admitted over the objection thereto by defendant. Why, in view of defendant's pleas, this objection was made is not

apparent, except that as the declaration averred a general contract of carriage, there was a variance between the allegata and probata. Whether this objection was well founded it is unnecessary to decide, as liability must be measured by the terms in the special contract, if the contract is valid, as it appears to be, for it was adopted by carriers in official classification territory, effective June 1, 1916, and was in force at the date of the contract, unless the limitation as to the time of suit was suspended by federal legislation, a question to be subsequently considered.

The first point urged in support of the judgment below is that there was no competent evidence introduced by plaintiff showing loss or non-delivery of the property consigned, and that upon demurrer to the evidence, the incompetent evidence relied on should not be considered. There was full proof of the delivery of the goods to the carrier; indeed the bill of lading evidenced this; and there was evidence showing or tending to show that the consignment had not been delivered to destination; that the car had been side-tracked and it with its contents destroyed by fire.

Plaintiff relied mainly on letters received from C. C. Glessner, freight claim agent of the railroad company. In his letter of December 18, 1919, in reply to plaintiff's letter of November 2nd, he admitted the destruction by fire of the car and contents, while in the yards of the P. & L. E. Ry. Co., but claimed that the destruction was due to the inherent nature of the commodity and not to any negligence of defendant, and declined payment of the claim on that ground. There was no evidence justifying this conclusion; quite the contrary.

The contention of defendant's counsel is that the admissions of the claim agent in these letters were incompetent, and that without them plaintiff had not made a prima facie case. This proposition we do not think is sustained by the authorities. The admissions of an agent pertaining to a particular business entrusted to him are competent evidence against his principal. Glessner was claim agent of defendant. Complaint was made to him. He had jurisdiction

of the subject matter. Plaintiff company had the right to rely on information obtained from him as to the cause of defendant's failure to deliver the goods. *Karr* v. *B. & O. R. R. Co.*, 76 W. Va. 526. The case of *Peterson* v. *Paint Creek Collieries Company*, 71 W. Va. 334, respecting the extra judicial subsequent admissions of a mine boss, and other authorities relied on, are inapt. This and the other authorities cited by defendant relate to admissions of agents not authorized, and not competent as a part of the res gestae, and not to admissions by the very agent to whom the particular business has been intrusted. This is the distinction rendering the cases cited inapplicable.

The next proposition in support of the judgment is that the action was barred by the limitation stipulated in the contract, of two years and one day. As suggested, this defense was interposed by special pleas filed. The contract pleaded, the bill of lading, was not introduced in evidence by defendant, but by plaintiff. Of course that contract was then in evidence for all purposes of plaintiff or defendant on the issues joined, for either party may make out his case by the evidence of the other. The suit was brought February 9, 1921. The consignment was shipped June 8, 1918; and the evidence of defendant's expert witness is that, considering the existing conditions of traffic on defendant's line and its connecting lines during the World War, two months should have been regarded a reasonable time for the carrier to deliver the property at Hammond, Indiana, the point to which the car was diverted after its original consignment. That would have given defendant and the connecting lines until August 8, 1918, to make delivery, and from which date the limitation prescribed in the bill of lading for bringing the suit would have commenced. Accordingly the time for bringing suit elapsed on August 9, 1920, thus showing that limited by the contract, this action was barred on February 9, 1921, and had been barred just six months before it was begun.

Plaintiff's counsel interpose two grounds in reply to the plea of limitation; First, that defendant by its conduct waived this defense. Assuming that a carrier may waive this

condition of its contract, we do not find in the evidence any-
thing on which to base this contention. A carrier should be
prompt to deny its liability in such cases. So held in
Michie on Carriers, §1494, and *Gulf, etc., Ry. Co.* v. *Gatewood,*
10 L. R. A. 419. Looking to the evidence we find that the
claim of plaintiff was first made on September 28, 1918, which
was acknowledged by defendant's claim agent on October
9, 1918. On December 30, 1918, he wrote plaintiff in reply
to its letter of December 19, 1918. That letter of plaintiff
is not produced, but the reply to it seems to indicate that it
gave information that the car in question had been destroyed
by fire. In defendant's letter it was stated that the railroad
company had no information or record of this fact, and re-
quested further advice, suggesting possible confusion between
this and some other pending claims of plaintiff. The next
communication by Glessner is dated March 27, 1919, which
apparently is in answer to a letter of plaintiff of December
23, 1918, in which he combats some of the facts communi-
cated in the letter under reply, and says that the car in
question received prompt movement, and on arrival at its
destination the commodity was bady decomposed, and that
the P. & L. E. track and yard men refused to transfer the lad-
ing on account of the draw-head being out, and that it took
fire on the night of July 6th, due to the greasy nature of the
commodity, and that the car as well as its lading was to-
tally destroyed. These facts, he said, disproved the claim
of plaintiff that the car was destroyed in preference to hav-
ing the lading transferred, and further advised that the
whole situation was that the nature of the commodity was so
inflammable that the loss was sustained through no fault of
the carriers, and requested withdrawal of the claim.

On December 18, 1919, Glessner wrote plaintiff, referring
to a letter of November 2nd, written after information re-
specting the car had been developed through the P. &. L. E.
Ry. Co., conceding to plaintiff that the car had been de-
stroyed by fire and the defect in the draw-bar, but denying
that the latter had any effect on the commodity, reaffirming
its declination of the claim, and advising plaintiff that the

records of the defendant had been closed as to this claim. This, in our judgment, amounted to a positive declination to pay the claim. This declination was reaffirmed in subsequent letters to plaintiff and to Morris & Company, of which company plaintiff was a subsidiary, and by whom the matter had been taken up with a view to re-open the case. In none of these letters was there hesitancy or delay, or intimation that the matter would be re-opened and favorably considered by defendant company.

The shipment involved here was interstate, and the rules governing it must be applied. Could the defendant by its conduct or otherwise waive the limitation of the contract? We think it could not. In fact it was so decided in *Ga., Fla. & Ala. Ry Co.* v. *Blish Milling Co.,* 241 U. S. 190; and in *Texas & Pac. Ry Co.* v. *Leatherwood,* 250 U. S. 478. It was there held that parties to a contract of interstate shipment made pursuant to the Act to Regulate Commerce can not waive its terms; nor can a carrier by its conduct give a shipper the right to ignore such terms and hold the carrier to a different responsibility than that fixed by the agreement made under the published tariffs and regulations; and Mr. Justice Holmes says in the Blish case: "A different view would antagonize the plain policy of the Act and open the door to the very abuses at which the Act was aimed." The purpose of this act, as the act itself discloses, was to prevent unlawful discrimination between shippers, and preferring one shipper over another. This decision would seem to be conclusive on the parties on the proposition of waiver by conduct.

The second proposition of plaintiff's counsel is that the provision of the bill of lading limiting actions to two years and one day was, under the circumstances of this case, unreasonable. The only authority for this proposition cited by counsel is *Decker's Case,* 55 I. C. C. 460. In that case the Commission said: "We are of opinion that the present bill of lading provisions are unreasonable in that they do not accord the shippers that right where the carrier fails to take prompt action in adjusting the claim. Defendants call

attention to the practice of some shippers of insisting that claims which have once been definitely declined be repeatedly re-opened for further consideration. We are of opinion that defendants may reasonably and properly provide in this respect that the period prescribed within which suit shall be instituted after the declination of the claim shall date from the definite declination in writing of the claim.''

There is nothing in Decker's Case contravening the principles of the federal supreme court decisions cited. Indeed the Interstate Commerce Commission recognized, as it was bound to do, the binding authority of those cases. The question before the commission in the Decker Case was whether carriers, notwithstanding the limitation in the bill of lading respecting the time for instituting suits, operated also as a limitation on the rights of carriers to adjust and pay losses or meritorious claims after that time, if presented in time by shippers. Numerous shippers had made complaint that some of the carriers had indulged in unjust and unfair discriminations and practices of allowing and paying some claims after the period of limitations for suit, and declining to pay others; and carriers as well as shippers then before the commission were anxious to know their respective rights and duties, that they might not come in conflict with the federal statute against such discriminations. The commission held that the limitation in the contract related to the remedy and was not intended to operate as a limitation on the right of the carrier to adjust and pay meritorious claims after the time for suit had expired, if in doing so they indulged in no unjust and unfair discriminations. And holding this to be the law, the commission suggested the change in the uniform bill of lading which has now been adopted by the carriers. It is also held that such adjustment and payment after the two years and one day limitation should not be regarded as a waiver of defenses open to it.

The only other proposition relied on by plaintiff's counsel as ground for reversal is that by the Transportation Act of 1920, the period of limitation prescribed by the contract was suspended for the period covered by federal control and

operation of the railroads. Section 206 (a) of the Transportation Act of 1920 is as follows: ''Action at law, suits in equity and proceedings in admirality, based on causes arising out of the possession, use or operation of the railroad or system of transportation of any carrier (under the provisions of the Federal Control Act, or of the Act of August 29, 1916) of such character as prior to Federal control could have been brought against such carrier, may, after the termination of Federal control, be brought against an agent designated by the President within thirty days after the passage of this Act. Such actions, suits, or proceedings may, within the periods of limitation now prescribed by State or Federal statutes but not later than two years from the date of the passage of this Act, be brought in any court which but for the Federal control would have had jurisdiction of the cause of action had it arisen against such carrier.''

The cause of action in this case arose during the operation of the railroads by the President. But in the case of *New York Cent. R. R. Co.* v. *Lazarus,* 278 Fed. Rep. 900, it is held, that the federal statute was not intended to suspend the operation of the two years and one day limitation provided in a bill of lading. Referring to *M. K. & T. Ry. Co.* v. *Harriman,* 227 U. S. 657, the court says that it is apparent from this case that right of the carrier to provide ''a rule, contract or regulation that suits must be brought within a reasonable time is not derived from the statute, but existed before the statute was enacted.'' Nor does section 206 (f) of said statute have any application. It provides: ''The period of Federal control shall not be computed as a part of the periods of limitation in actions against carriers or in claims for reparation to the Commission for causes of action arising prior to Federal control.'' By its very terms it is limited to actions against carriers or claims originating prior to federal control. The cause of action here originated during federal control, and the rights of the parties depend upon the provisions of the contract, and are limited as therein prescribed.

Our conclusion is to affirm the judgment below.

*Affirmed.*