163 S.E.2d 790 (1968)
STATE ex rel. Louis LINGER et al.
v.
BOARD OF EDUCATION OF PUTNAM COUNTY, etc., et al.
No. 12760.
Supreme Court of Appeals of West Virginia.
Submitted October 8, 1968.
Decided October 22, 1968.
Lively & Francis, J. Henry Francis, Jr., Charleston, for relators.
Clarence L. Watt, Pros. Atty., Putnam County, Nitro, for respondents.
BROWNING, Judge.
The petitioners in the above styled case, invoking the original jurisdiction of this Court, filed their petition for a writ of mandamus against the respondents on the 12th *791 day of August, 1968. A rule was awarded requiring the respondents to show cause why the writ should not issue as prayed for and the case was thereafter briefed and argued in this Court.
The pertinent facts have been stipulated by the parties. Prior to March, 1968, petitioners Linger and Oldaker were employed by the Board of Education of Putnam County as teachers and under the provisions of Code, 18-7-1, as amended, they were serving under continuing contracts. During the 1967-68 school year Linger served as principal of Buffalo High School and Mrs. Oldaker served as principal of Buffalo Elementary School. On March 19, 1968, the respondent Scites, Superintendent of Schools of Putnam County, submitted to the board two listsone containing his recommendations for assignment of principals to secondary schools for the 1968-69 school year and the other containing his recommendations for the assignment of principals of the elementary schools for the year. Those lists showed the petitioners as continuing in the positions they had held in the previous school year. The board refused to act upon these lists; whereupon at the same meeting Scites presented two additional lists to the board containing recommended assignments of principals for the 1968-69 school year which were identical to the first lists except that the new lists showed petitioners assigned as principals of George Washington Junior High and Nitro-Putnam Elementary schools, Linger to the former and Oldaker to the latter. A motion was made, seconded and passed, at that board meeting "to employ, transfer or assign" the petitioners as principals as provided by the second set of lists. On the following day, the 20th, each of the petitioners was notified by mail that the board "employed you as principal of George Washington Junior High School" and the board "employed you as principal of Nitro-Putnam Elementary School", each for the 1968-1969 school term. It is stipulated also that Linger was, on March 20th, orally advised by the Assistant Superintendent of Schools of the action of the board at its meeting on the previous day. At a subsequent meeting of the board held on April 2, 1968, respondent Scites presented to the board a list of "teaching personnel for transfer and subsequent assignment at a later board meeting." The name of neither of the petitioners was on that list. Also at that session of the board, the respondent Scites presented a list of his recommendations for the "assignment" for the 1968-69 term of all teachers and coaches employed by the board except those on the transfer list, which list included petitioners as the principal of George Washington Junior High School and Nitro-Putnam Elementary School, respectively. A motion was adopted by the board "to employ, and/or assign the * * * teachers and coaches for the 1968-69 school term" as set forth on the list. On April 15, respondent Scites sent each of the petitioners a form letter stating "that you have been employed and placed as principal at the George Washington Junior High School [or Nitro-Putnam Elementary School] for the 1968-69 school term." The petitioners thereafter protested their alleged transfers, demanded that Scites and the board reassign them to the positions held during the previous year, and Scites and the members of the board refused to do so. It is stipulated that the new assignments of the petitioners constituted demotions to positions of less responsibility and importance and that the salary of Linger will be $844.00 less than in the previous year and the salary of Mrs. Oldaker $287.00 less. It is also agreed that one of the petitioners will have to bear increased costs of transportation if she continues to maintain her present residence.
In oral argument counsel for the respective parties agreed that the outcome of these proceedings depends upon this Court's determination of the meaning of the language contained in Code, 18-5-4, as amended, and we are of a like view. This section, insofar as pertinent, provides as follows: "* * * At a meeting of the board, on before the first Monday in May the superintendent shall furnish in writing to the board a list of those teachers to be considered *792 for transfer and subsequent assignment for the next ensuing school year; all other teachers not so listed shall be considered as reassigned to the positions held at the time of this meeting. Such list of those recommended for transfer shall be included in the minute record and the teachers so listed shall be notified in writing, which notice shall be delivered in writing, by certified mail, return receipt requested, to such teachers' last known addresses within ten days following said board meeting, of their having been so recommended for transfer and subsequent assignment. * * *" Prior to its amendment by Chapter 65, Acts of the Legislature, Regular Session, 1957, this section did not contain the specific language with reference to the transfer of teachers, but merely provided that "* * * The board shall meet at the court house of the county on the first Monday in May in each year and shall appoint the teachers for their district. At which time, it shall be the duty of the superintendent of schools to furnish each member of the board an approved list of all qualified teachers for the schools of said district for the ensuing year. * * *"
This Court construed the provisions of the act prior to its amendment in Neal v. Board of Education of Putnam County, 116 W.Va. 435, 181 S.E. 541, and granted a writ to Neal, one of forty-seven teachers of Putnam County who had been assigned to certain schools on May 6, 1935, and transferred by an order entered on August 20, 1935, the record showing that the transfer of the teachers "was made upon the recommendation of the Superintendent of Schools." With reference to the power granted to county superintendents of schools by Code, 18-4-10, as amended, to "assign, transfer, suspend, promote or dismiss teachers" this Court said: "That power, however, may be used only for regulation and in emergencies. Even then, it must be exercised in a reasonable manner. The best interests of the schools must be intended. Arbitrary or capricious use of the power will not be tolerated. The presumption of good faith which is ordinarily accorded an official act can not prevail in this case. No change in the school conditions of Putnam County between May 6th and August 20th (the two meetings of the Board) is asserted. The wholesale shifting of teachers on August 20th is alone sufficient to shake the presumption of good faith, and the presumption falls before the uncontroverted evidence of Neal and Miller. With that presumption prone, and the motives of the Board for changing Neal impugned and not defended, we must conclude that the change is without justification." The provisions of Code, 18-5-4, after the 1957 amendment, are much more stringent and protect the teachers against arbitrary transfers near the beginning of a school term for obvious reasons. By Chapter 60, Acts of the Legislature, Regular Session, 1967, effective July 1, 1967, the section was amended to require notice within ten days following the board meeting to any teacher who, at such meeting, had by the superintendent of schools "been so recommended for transfer and subsequent assignment." (Italics supplied.) We believe the statute, as amended, is clear and unambiguous and that its pertinent provisions are mandatory with regard to the board and the superintendent of schools.
As provided by the act, the Board of Education of Putnam County did meet "before the first Monday in May," to-wit, on March 19, but thereafter the provisions of that act were not precisely or even substantially complied with. It was not necessary for the superintendent to supply a list of teachers or coaches who were to be reassigned to the schools where they served in the preceding year, the section clearly providing that "all other teachers not so listed shall be considered as reassigned to the positions held at the time of * * * [the meeting] of the board." It was mandatory upon the superintendent of schools to furnish in writing to the board at that meeting or some meeting prior to "the first Monday in May" a list of those teachers to be "considered for transfer and subsequent *793 assignment for the next ensuing school year;". From the facts hereinabove stated, taken from the stipulation, it will be noted that that procedure was not followed as to these petitioners. Whatever recommendation was made to the board at the March 19 meeting, what the board did was "to employ, transfer, or assign" the petitioners and each was then informed that the board had "employed" each of them as principal of a different school. The first notice these petitioners had of a change in their places of employment was in language of the past tense. They were informed that they had been "transferred" or "employed" or "placed"not that they would prospectively be "considered" for such.
It is the opinion of this Court that such action is clearly contrary to the plain provisions of the section. The section is clear that the superintendent shall submit a list of teachers to the board "to be considered for transfer and subsequent assignment for the next ensuing school year;" but that is not enough to comply with the section. Those recommended for transfer "shall be notified in writing, which notice shall be delivered," etc. Be notified of what? Not of the fact that they have been "employed" or even that they have been transferred or reassigned, but notified that they have been "recommended for transfer and subsequent assignment." It is the view of this Court that that language unmistakably provides that, before a transfer can be validly made, a teacher whose transfer has been recommended by the superintendent must be given an opportunity to be heard before the board is authorized to accept the recommendation and effectuate the transfer. As the mandatory provisions of this section were not complied with the transfers of the two petitioners were invalid and therefore the provisions in the section to the effect that all teachers not listed for transfer "and subsequent assignment * * * shall be considered as reassigned to the positions" theretofore held will prevail. The petitioner Linger is still the principal of Buffalo High School and the petitioner Oldaker is still the principal of Buffalo Elementary School inasmuch as neither was transferred to another school within the time and in the manner provided by law.
Writ awarded.