STATE *ex rel.* CHARLES WITHERS

*v.*

THE BOARD OF EDUCATION OF MASON COUNTY, *et al.*

*and*

STATE *ex rel.* CHARLES CHAMBERS

*v.*

THE BOARD OF EDUCATION OF MASON COUNTY, *et al.*

(No. 12902)

Submitted February 10, 1970.     Decided March 17, 1970.

*R. Michael Shaw, Gordon Billheimer*, for relator plaintiff.

*Greene, Ketchum, Baker & Pauley, Lawrence L. Pauley*, for defendant respondents.

CALHOUN, JUDGE:

This case is before the Court on a writ of error to the judgment of the Circuit Court of Mason County entered on September 2, 1969, in two separate proceedings in mandamus which were consolidated for hearing and decision by the trial court, sitting without a jury. In the two proceedings, Charles Withers and Charles Chambers, respectively, were the relators. In both cases, the respondents were the Board of Education of Mason County, the five individual members of that body and I. Brooks Smith, the County Superintendent of Schools of Mason County.

The cases which were consolidated involved the action of the board of education in ordering the transfer of Charles Withers and Charles Chambers from their respective positions of employment as principal and as assistant principal of Point Pleasant High School. In the consolidated mandamus proceedings, the relators sought a

court order requiring the respondents to retain the relators in their respective positions of employment at Point Pleasant High School.

By the order entered on September 2, 1969, the trial court awarded a writ of mandamus commanding the respondents to restore the relators to their respective positions of employment "and to restore to each of the relators all of the remuneration and emoluments of the offices of Principal and Vice Principal to which they are entitled for the period during which they were deprived by the actions of the respondents from performing the duties of their respective offices." It is from the judgment embodied in this court order that the respondents were granted the writ of error to this Court on December 8, 1969.

After the case was appealed to this Court, the respondents were granted leave to move to reverse the judgment of the trial court pursuant to Code, 1931, 58-5-25 and Rule IX of the Rules of this Court. In these circumstances, the case was submitted for decision in this Court upon the original record and upon briefs which were typewritten rather than printed. The case was argued orally by counsel for the respective parties.

By a writing duly filed on January 9, 1970, the respondents have moved to dismiss the appeal to this Court as having been improvidently awarded because of the fact that the relators failed to obtain a bill of exceptions or a certificate in lieu thereof pursuant to the provisions of Code, 1931, 56-6-35 and 36. These statutory provisions are not applicable because they have been superseded by an amendment of R.C.P. 81 (a) (5), by order entered on March 3, 1969, which, of course, was effective before the entry of the judgment order on September 2, 1969.

The written motion to dismiss the appeal asserts that no summons was issued and served upon Withers and Chambers pursuant to Code, 1931, 58-5-12. The

record in the office of the Clerk of this Court discloses that proper and timely summonses were mailed to one of counsel for the respondents. This proposition relating to service of process has not been urged by counsel in this Court either by brief or by oral argument. Following is the first point of the syllabus of *Roach* v. *Wallins Creek Collieries Company,* 111 W. Va. 1, 160 S. E. 860: "The pendency of a suit on appeal in the Supreme Court of Appeals originates in the awarding of the appeal or writ of error and does not depend upon the issuance of summons as in the *nisi prius* court." See also *Worsham* v. *Hewlett,* 114 W. Va. 616, 173 S. E. 78. In any event, the appearance of the defendants in error by the filing of a brief and by oral argument of counsel constituted a general appearance and the defect, if any, in the service of process was waived. *William F. Mosser Company* v. *Payne,* 92 W. Va. 41, pt. 1 syl., 114 S. E. 365.

The motion to dismiss also asserts that the petition for a writ of error is defective because of its failure to assign errors as required by Code, 1931, 58-5-4. Subsection 1, Rule II of the Rules of this Court contains a similar provision as follows: "A petition for an appeal or writ of error should briefly state the case and must assign errors, * * *." The petition in this case assigns numerous errors and is proper in this respect. The written motion to dismiss also asserts that the case has now become moot. We will consider and discuss the question of alleged mootness subsequently in this opinion.

Charles Withers and Charles Chambers held their respective positions as principal and assistant principal of Point Pleasant High School for the 1968-69 school term and for several prior school terms. Code, 1931, 18-5-4, as amended, contains the following language relating to county boards of education:

"* * * At a meeting of the board, on or before the first Monday in May, the superintendent shall furnish in writing to the board a list of those teachers to be considered for transfer and subsequent assignment for the next ensuing school

year; all other teachers not so listed shall be considered as reassigned to the positions held at the time of this meeting. Such list of those recommended for transfer shall be included in the minute record and the teachers so listed shall be notified in writing, which notice shall be delivered in writing, by certified mail, return receipt requested, to such teachers' last known addresses within ten days following said board meeting, of their having been so recommended for transfer and subsequent assignment."

Code, 1931, 18-4-10(3) authorizes the county superintendent of schools to transfer teachers "subject only to the approval of the board."

At a special meeting of the board of education held on April 29, 1969, Superintendent Smith submitted a list of teachers to be considered for transfer and subsequent assignment, pursuant to the provisions of Code, 1931, 18-5-4, as amended, which provisions have been quoted previously in this opinion. Among teaching personnel recommended by the superintendent for transfer and subsequent assignment by the board were the relators, Charles Withers and Charles Chambers. The list submitted by the superintendent merely recommended the transfer of the relators from their positions at Point Pleasant High School, with the following notation in each of the two cases: "Inadequate Planning and Supervision." The list submitted by the superintendent to the board did not include a recommendation of a place or position to which either of the relators should be transferred.

At a regular meeting of the board held on May 13, 1969, the superintendent submitted to the board a written statement, pursuant to the provisions of Code, 1931, 18-5-4, as amended, containing a list of five teachers, including both relators in this case, each being designated by name, who were recommended by the superintendent for transfer and subsequent assignment for the 1969-70 school term. Two of the five, according to the report submitted to the board, had requested transfers. The fifth, according to the report, had been recommended for transfer by her principal. The

superintendent's report to the board stated that the five persons recommended for transfer and subsequent assignment "were notified by certified mail with receipt attached."

It is not denied that Superintendent Smith mailed to each of the two relators, "by certified mail, return receipt requested," a letter stating that he had been recommended to the board, at the April 29, 1969, special meeting, for transfer and subsequent assignment. It is not disputed that each of the relators received the letter thus mailed to him. The letters were similar in form and content. The letter to Withers, for example, contained the following language:

"The reason for recommending your transfer is inadequate planning and supervision.

"This letter is to hereby notify you, Mr. Withers, of the submitted recommendation for transfer and subsequent reassignment. In compliance with the provisions of the Code, you must be notified by certified mail, and the Board at a later date, tentatively May 13, 1969, their next regular meeting, will place you for the ensuing school term of 1969-70."

The relators both having been given notice, pursuant to the mandatory requirement of Code, 1931, 18-5-4, as amended, we are not here concerned with the question decided in *State ex rel. Linger* v. *Board of Education of Putnam County*, 152 W. Va. 379, 163 S. E.2d 790. In the *Linger* case, the Court held that the statutory requirement of advance notice to a teacher having been recommended for transfer and subsequent assignment was mandatory, and that attempted transfers of teachers, in the absence of compliance with that mandatory statutory requirement, were not legally valid transfers.

At its regular meeting held at the office of the board on May 13, 1969, the board had before it a written statement from the superintendent which, in its entirety, was made a part of the minutes which recite proceedings had at that meeting. The writing submitted by the superinten-

dent to the board and made a part of the minutes of the board's regular May 13, 1969, meeting contained the following language:

"1. Charles Withers—Reason for transfer is inadequate planning and supervision at Point Pleasant High School. Disciplinary measures are too lax. Planning and supervision is inadequate in order to provide a sound educational climate. Possibly, Mr. Withers would do better in elementary education.

"2. Charles Chambers—Reason for transfer is inadequate planning and supervision.

"In reference to inadequate planning and supervision, as an example, a fight developed at Point Pleasant High School gym during the sixth period on April 16, 1969. There were no teachers present. After checking, I found that the coaches were out for school activities, and the girls' physical education teacher had gone to the principal's office for some particular duty and the pupils were left unattended. The ultimate result was general chaos and a fight developed between Clarence Clonch (cuts that required several stitches) and David Ebert. There were several boys in the gymnasium and it appeared that this was not unusual for boys to be in the gymnasium without supervision.

"Anyone in the school system, particularly an administrator, need not be reminded day after day that at no time should the students be left unattended. This is not solely the responsibility of the teachers, but the school administrator (s) should see that this is not tolerated. We have instructed the principals to report to the county office immediately any activities in their school that cause disruption, chaos, or injury. As of this date, May 13, 1969, the above incident has not been reported. I am only recommending a transfer for Mr. Withers and Mr. Chambers. I am of the opinion that I have sufficient grounds for dismissal. The charge could be interpreted as wilful neglect of duty in pursuance of the provision of Section 6, Article 7, Chapter 18, *Code of West Virginia.*"

By brief and oral argument of counsel for the relators, it has been intimated that the concluding portion of the language quoted immediately above indicates that the superintendent was recommending the termination of the continuing contracts of the relators as teachers pursuant to the provisions of Code, 1931, 18-7-1, as amended, prior to a legislative repeal thereof by Chapter 140, Acts of the Legislature, Regular Session, 1969, which became effective July 1, 1969. This contention is without merit for the reason that it appears clearly from the record that neither the superintendent nor the board at any time attempted or had in contemplation a termination of the relators' contracts as teachers.

At the regular meeting of the board held on May 13, 1969, a large group of people assembled at the place at which the meeting was held. These people undertook to crowd into the room in which the board was endeavoring to conduct its meeting. It is apparent that the large group of people thus gathered to attend the meeting became unruly or obstreperous in such a manner as to disrupt the board in its effort to conduct an orderly meeting. One member of the board moved that the meeting be adjourned to the more commodious quarters of the courtroom of the county courthouse. The motion was duly seconded and defeated by a three to two vote of the members of the board.

In the circumstances arising from the conduct of the assembled group of people, the president of the board directed that the board go into a type of meeting which is referred to in the minutes and elsewhere in the case as an "executive session." This was not an "executive session" in the sense that it included only members of the board. Present in addition to the members of the board were Superintendent Smith, his assistant and the two relators, Withers and Chambers. Members of the press, four or more in number, were invited to be present. Other members of the public who were present insisted that they had as much right as the representatives of the

press to be present in the room where the meeting was being held. In these circumstances, the members of the press declined to attend the meeting.

The minutes of the meeting contain the following language: "Sheriff Hoffman appeared in executive session and was asked to clear the board office, so that, an orderly meeting could be held. He refused stating that warrants would have to be secured before he could carry out request of the board." It appears, nevertheless, that both Withers and Chambers were present at the portion of the board meeting which is referred to as an "executive session"; and that during that portion of the meeting oral statements were made by both of them as well as by Superintendent Smith in relation to the proposed transfer of the relators for subsequent assignment. Additionally, Withers and Chambers submitted to the board at the "executive session" a rather lengthy joint statement in writing, with exhibits attached thereto, by which they stated in considerable detail their contention that they should not be transferred from their respective positions at Point Pleasant High School.

The minutes of the meeting contain the following recitations of the proceedings:

"At 10:40 the executive session ended and regular session was in order.

"The Prosecuting Attorney advised President Keefer to recess the meeting until an orderly meeting could be held.

"Mr. Siders moved that the meeting be recessed until a later date. This was seconded by Dr. Brown. Vote unanimous.

"Meeting recessed at 11:17 P.M."

A special meeting of the board of education was held on May 27, 1969. A notice of the call of the special meeting was directed to each of the five members of the board. The meeting was called for the purpose of giving further consideration to matters which were a part of the agenda

of the May 13, 1969, regular meeting. Present at the special meeting were four of the five members of the board, including President Earl H. Keefer. One member, Theodore Stevens, was absent. The relators, Charles Withers and Charles Chambers, were not present and previously had received no formal notice of the fact that the meeting was to be held or of the fact that the matter of their proposed transfer would be further considered by the board at that meeting.

Nevertheless, the proposed transfer was considered and acted upon by the board at the May 27, 1969, special meeting. Superintendent Smith submitted to the board at that meeting his recommendation that Charles Withers be transferred to Sunnyside School and that Charles Chambers be transferred to Wahama Junior and Senior High School for the 1969-70 school term. Upon a motion duly made and seconded, Withers and Chambers, according to the minutes of the meeting "were approved for transfer but to place at a later date." That is, their transfer was approved, but the board held in abeyance for subsequent consideration the question of the school or schools to which the transfers would be made. On the motion to transfer, two members of the board, Dr. C. L. Brown and Harry Siders, voted in the affirmative and Bill Withers, brother of Charles Withers, voted in the negative. President Earl H. Keefer abstained from voting on the motion, presumably because his vote as president was not necessary to "break a tie" in the voting.

The mandamus petitions were filed in the office of the Clerk of the Circuit Court of Mason County on June 23, 1969. Pursuant to the prayers of the mandamus petitions, and by orders entered on June 23, 1969, the circuit court issued rules to show cause returnable before the court on July 11, 1969, at 9:30 a.m.

After various pleadings were filed by the respondents in response to the prayers of the mandamus petitions, and after court action on such pleadings, the court, by

an order entered on July 25, 1969, consolidated the cases for trial. Subsequently the consolidated actions were submitted to the court for decision upon the pleadings, the testimony of numerous witnesses taken at the bar of the court, various exhibits which were made a part of the evidence by stipulation, and upon briefs and oral argument of counsel.

By a written opinion in the form of a letter dated August 15, 1969, directed to counsel for the respective parties and made a part of the record by court order, the trial judge stated in general terms the basis of and reasons for his decision in the following language:

"Based upon the pleading and the evidence, including both the oral testimony and the exhibits, the action of I. Brooks Smith, County Superintendent of Schools of Mason County, in making his recommendation to the Board of Education of Mason County for transfer of Charles Withers and Charles Chambers, the petitioners herein, from the position of principal and of vice principal respectively of Point Pleasant High School, and the subsequent action of the Board of Education of Mason County upon a vote of a majority of its members, that is, C. L. Brown, Harry Siders and Earl Keefer, in accepting the recommendation, were arbitrary and capricious and should be negated. Further, the evidence clearly discloses variance between the context of the notice to the petitioners of April 29, 1969, and the matters presented to, received by, and acted upon by the Board of Education in its action in accepting the recommendation of the superintendent of schools as to both petitioners, which variance is material and fatal as regards the requirements of the Statute for notice and hearing.

"The petitioner Charles Withers is still the principal of Point Pleasant High School and the petitioner Charles Chambers is still the vice principal of Point Pleasant High School in as much as neither was transferred to another school within the time and in the manner provided by law."

Though the trial was held early in July, the court did not enter its judgment order until September 2, 1969, which obviously was near the time for the commencement of the 1969-70 school term. On October 15, 1969, the respondents gave proper written notice that, on October 23, 1969, they would move the circuit court to suspend its final judgment in order to enable the respondents to prosecute their appeal to this Court.

On October 20, 1969, the relators, by a writing filed in the office of the clerk of the trial court, moved that the circuit court enter an order directing that a rule be issued against the respondents to show cause, on a date to be fixed by the court, why each of them should not be adjudged to be guilty of contempt of court and punished for failure to carry into effect the judgment order of the court by their alleged failure to restore to each of the relators "all the remuneration and emoluments" of their positions as principal and "vice principal" of Point Pleasant High School. By an order entered on October 20, 1969, the court directed the issuance of a rule against the individual respondents, returnable on October 23, 1969, "to show cause why they and each of them should not be punished for such failure; * * *." After the respondents were thus cited for contempt, they apparently abandoned their motion for a stay of further proceedings pending their appeal to this Court.

In the meantime, in obedience to the order of the circuit court and in contravention of the order of the board of education, the relators were again placed in their positions of employment, for the 1969-70 school term, as principal and as assistant principal, respectively, of Point Pleasant High School. They were continuing in such positions at the time the case was argued and submitted for decision in this Court, and presumably they have since that time continued in the same positions of employment.

The trial court held, and counsel for the relators contend, that the superintendent and the board acted arbi-

trarily and capriciously in connection with the proposed transfer of the relators from their teaching positions in Point Pleasant High School. The respondents, on the other hand, contend that they properly exercised the discretionary powers with which they are clothed by law; that they did not abuse their discretion; and that they acted in a reasonable and lawful manner in the performance of their official duties. We believe, therefore, that the basic question presented to this Court for decision is whether the trial court erred in holding that the superintendent and the board, particularly the members of the board, abused their discretion and acted in an arbitrary and capricious manner.

The trial court held, and on this appeal counsel for the relators contend, that there was a fatal variance between the notice mailed to the relators by the superintendent and the "matters" upon which the board subsequently acted in ordering that the relators be transferred. This holding of the trial court incorrectly assumes that, under the pertinent statute, the notice from the superintendent was required to set forth charges to form a basis of a right to be heard in relation to the charges thus made. The statute, Code, 1931, 18-5-4, as amended, merely required that the superintendent give to the relators notice "of their having been so recommended for transfer and subsequent assignment." This is made clear in the opinion in *Linger* v. *Board of Education of Putnam County*, 152 W. Va. 379, 383, 163 S. E.2d 790, 793. It is true that this Court there stated that the teacher must be given "an opportunity to be heard" before the board may accept the superintendent's recommendation and effectuate a transfer.

We do not construe the *Linger* case as authority for the proposition that a teacher is entitled to a full-blown, formal hearing with an opportunity to adduce testimony in an effort to refute or to disprove whatever reason or reasons the board may deem adequate to justify a transfer of the teacher. Doubtless many, perhaps most, trans-

fers of teachers by county boards of education do not involve any finding of misconduct, unfitness or anything else reflecting unfavorably upon the teachers who are transferred. We must approach an appraisal of the actions of the respondents in this case with a presumption that they, as public officials, were actuated by proper motives in the performance of their duties in conducting an efficient public school system in the county.

It is conceivable that many teachers are transferred by county boards of education, not because of inefficiency, misconduct or unfitness, but rather because of the mere fact that they are competent, effective teachers, and that, therefore, a proper administration of the county public school system dictates the basis of transfers to places and positions where the teachers' special qualifications will better promote the entire public school program of the county.

A mere transfer of a teacher pursuant to Code, 1931, 18-5-4, as amended, is clearly distinguishable from a situation involving a termination of a teacher's continuing contract pursuant to Code, 1931, 18-7-1, as amended, or Code, 1931, 18-7-6, which statutes were in effect at the time pertinent to this case and before their repeal by Chapter 140, Acts of the Legislature, Regular Session, 1969, which repeal became effective July 1, 1969. Those statutes clearly and expressly provided for charges in writing against the teacher and a right of the teacher to be heard in relation to the charges thus made against him. No similar or analogous provisions are found in the statute involved in this case which deals with the mere transfer of a teacher from one position or place to another position or place in the county public school system.

The relators in this case were not merely given "an opportunity to be heard," in accordance with the language in the opinion in *Linger* v. *Board of Education of Putnam County*, 152 W. Va. 379, 384, 163 S. E.2d 790, 793, they were accorded an actual hearing. From the entire record in this case, we are unable to perceive any reason-

able basis for a conclusion that the respondents abused their discretion or that in any sense they acted in an arbitrary or capricious manner in the exercise of their discretion or in the performance of their official duties in ordering the transfer of the relators from their respective positions at Point Pleasant High School. We are of the opinion, therefore, that the trial court erred in undertaking to override and to nullify the action of the board in ordering the transfer of the relators and in thwarting the purpose of the board to place the relators in other teaching positions within the county.

To entitle one to prevail in mandamus, he must establish a clear legal right in himself to the relief he seeks and a corresponding duty of the respondent to perform the act demanded. *American Industrial Leasing Company* v. *McElroy,* 152 W. Va. 587, pt. 4 syl., 165 S. E.2d 617; *State ex rel. Zagula* v. *Grossi,* 149 W. Va. 11, pt. 4 syl., 138 S. E.2d 356. Mandamus does not lie to control tribunals or officers in the exercise of their discretionary powers, in the absence of a showing of caprice, passion, partiality, fraud, arbitrary conduct, some ulterior motive or misapprehension of the law. *State ex rel. Canterbury* v. *The County Court of Wayne County,* 151 W. Va. 1013, 158 S. E.2d 151; *State ex rel. Bronaugh* v. *The City of Parkersburg,* 148 W. Va. 568, 136 S. E.2d 783; *State ex rel. Conley* v. *Pennybacker,* 131 W. Va. 442, 48 S. E.2d 9. "Mandamus does not lie to control a board of education in the exercise of its discretion, in the absence of caprice, passion, partiality, fraud, arbitrary conduct, some ulterior motive, or misapprehension of law upon the part of such board." *State ex rel. Payne* v. *Board of Education of Jefferson County,* 135 W. Va. 349, pt. 1 syl., 63 S. E.2d 579.

In connection with the motion to dismiss the appeal as having been improvidently awarded, it is asserted that the case has "become moot for the reason that the respondents have fully complied with the peremptory writ of mandamus awarded by the Circuit Court of Mason County by its judgment order of September 2, 1969."

We are of the opinion that this contention is without merit. A litigable controversy still continued when the case was submitted to this Court for decision. The 1969-70 school term, for which the board ordered the transfer of the relators from their respective positions at Point Pleasant High School, is still existing. The relators were restored to their positions of employment by the trial court's judgment which is reversed on this appeal. The respondents resumed the payment to the relators of their salaries as principal and assistant principal, respectively, under threat of punishment for contempt of the circuit court and pursuant to the judgment which is reversed. The case must be remanded to the trial court for such further proceedings as may be proper in the altered circumstances. We are not warranted in holding that the case at this stage has become moot. *Orwasky* v. *Chuma,* 148 W. Va. 349, 135 S. E.2d 248; *West Virginia Board of Dental Examiners* v. *Storch,* 146 W. Va. 662, 122 S. E.2d 295; *Wyckoff* v. *Painter,* 145 W. Va. 310, 316, 115 S. E.2d 80, 85; 5 C.J.S., Appeal and Error, Section 1354(1), page 404 et seq.; 5 Am. Jur. 2d, Appeal and Error, Section 913, page 345.

For the reasons stated, the judgment of the Circuit Court of Mason County is reversed and the case is remanded to that court for such further proceedings therein as may be proper and consistent with this opinion.

*Reversed and remanded.*