251 S.E.2d 491 (1978)
Danny WALLS
v.
Walter MILLER, Director of W. Va. Dept. of Mines.
No. 14184.
Supreme Court of Appeals of West Virginia.
July 11, 1978.
Concurring Opinion August 15, 1978.
Rehearing Denied January 25, 1979.
*494 Daniel F. Hedges, Charleston, for relator.
Chauncey H. Browning, Jr., Atty. Gen., Marianne Kapinos, Asst. Atty. Gen., Charleston, for respondent. *492
*493 NEELY, Justice:
This original proceeding in mandamus by Danny Walls, President of Local Union 8217 of the United Mine Workers of America seeks to require the respondent, Walter Miller, Director of the West Virginia Department of Mines, to enforce certain provisions of chapter 22, art. 2 of the W.Va.Code concerning coal mines. The factual development concerns six mines in the vicinity of Mallory, Logan County, West Virginia, owned and operated by the Powellton Coal Company where the relator alleges that the respondent Director of Mines has either declined to enforce three specific safety requirements of the W.Va.Code, or has interpreted those requirements in such a way as to vitiate their intended effects.
The Code provisions under consideration are: (1) W.Va.Code, 22-2-42(a) [1977],[1] which requires that a telephone or equivalent two-way communication facility be located within 500 feet of all main portals and monitored by a responsible person on duty when men are underground; (2) W.Va.Code, 22-2-6 [1971],[2] which provides that mining equipment shall not be moved with men inby such equipment in the ventilating split passing over the equipment; and, (3) W.Va.Code, 22-2-60(g) [1977],[3] which requires that each section of the mine using or serviced by track-mounted or rubber-tired equipment have readily available a vehicle which can be used promptly to remove a person in case of injury.

I
At the outset, we must address the threshold question of whether a writ of *495 mandamus will lie in light of respondent's assertions that the petitioner has not exhausted his administrative remedies and that another adequate remedy exists.[4]
In this case the petitioner is not challenging one ruling by the Director concerning one particular safety problem in one isolated mine; to the contrary, he is challenging an entire philosophy of enforcement in which he alleges that the Director has completely misconstrued the requirements, purposes, and legislative intent of the three Code sections under review. Thus petitioner has formulated three broad legal issues which are not dependent for their resolution upon the type of detailed factual development which the administrative process envisages, but rather upon a broad interpretation of the manner in which certain sections of the mining laws should be enforced. The trend in this Court has been to enlarge the scope of mandamus. State ex rel. Smoleski v. County Court of Hancock County, 153 W.Va. 307, 168 S.E.2d 521 (1969), especially where there is an urgent question of public policy or where there is no reason for delaying adjudication of the issue by the highest court of the State.[5]
The ancient rule with regard to mandamus is that the writ will lie where the petitioner's remedies at law are inadequate, State ex rel. Kanawha Co. Board of Ed. v. Dyer, 154 W.Va. 840, 179 S.E.2d 577 (1971), and we find in the case before us that the alleged deprivations of petitioner's rights are capable of being repeated under numerous variations of a basic recurring factual pattern, in spite of all other available administrative and legal remedies if no definitive resolutions of these issues are provided by this Court.[6] Accordingly we hold that we have before us sufficient factual *496 stipulations to permit us to adjudicate the three issues raised in the petition, and that there is no sound reason for declining to grant extraordinary relief. Furthermore, in this case we are not concerned with a mere point of law in routine civil litigation, but rather with the lives and limbs of countless thousands of living, breathing, human beings who, along with their families, have suffered needless loss since time out of mind in an industry which appears inevitably to suck the life's blood from the miner as he takes the coal from the earth. The Legislature intended that this needless suffering should stop, and it is our duty to effect the legislative purpose by such means as will best accomplish that end.

II

A
Communication Facilities, Code, 22-2-42(a)
According to petitioner's allegations, the communications problem at Powellton Coal Company has been a continuing one. When the miners sought to have the federal regulations concerning readily available communication facilities, 30 C.F.R. § 75.1600-1 (1977), enforced, the company filed an administrative proceeding with the federal safety agency, and pursuant to the waiver authority under federal law, 30 U.S.C. § 811(c) (1977), obtained a waiver of the federal regulation. The petitioner then, with the assistance of union officials, sought to achieve the same result by securing enactment into State law of the same federal requirement which had been waived. This was accomplished by Acts of the Leg., Reg.Sess., 1977, C. 121. The requirement included in the 1977 legislation went into effect in July 1977, and during that month Powellton was cited for violation by a State mine inspector. After the company contacted the Director, the notice was voided although a subsequent demand by petitioner's counsel secured another notice on 9 September 1977. After further communication with the company, the Director extended the notice and no enforcement of the statute has been pursued since that time. The petitioner alleges, and the respondent does not controvert, that the Powellton Coal Company operates six mines in Logan County where the closest person who is always on duty when men are underground to respond in the event of an emergency is far in excess of the 500 feet of a main portal as mandated by W.Va.Code, 22-2-42(a) [1977]. The actual locations in terms of distance from the main portal for the respective mines are admitted to be as follows:

Powellton No. 7B  1½ miles from main portal to responsible person.

Powellton No. 11  1½ miles from main portal to responsible person.

Powellton No. 15A  2 miles from main portal to responsible person.
Powellton No. 25  2 miles from main portal to responsible person.
Powellton No. 31  1 mile from main portal to responsible person.

Powellton No. 17(1)  1¾ mile from main portal to responsible person.

Powellton No. 17(2)  2 miles from main portal to responsible person.
The statutory mandate is plain and unambiguous and should be applied and not construed. Furthermore, it is particularly persuasive that the waiver authority granted to responsible officials under the federal counterpart of our mine safety law has not been granted in this State's law. It is obvious that physical proximity to the site of a potential malfunction (given the inherently dangerous nature of even the safest coal mining operation) is a safety requirement intended by the legislature when it expressed distance in exact footage, and we see no reason to infer that the Legislature did not mean exactly what it said, namely that there shall be a person within 500 feet of at least one main portal who is always on duty while men are working. Obviously the greater the distance from the main portal to the communications station on the outside, the higher the likelihood of malfunction in the communications equipment itself, which must necessarily traverse the greater distance. If indeed *497 other equipment such as ventilating fans are malfunctioning on the outside, and such equipment is indispensible to the safety of miners on the inside, a person in direct contact with the inside workers needs to be present to supervise and direct the repair of whatever equipment happens to be malfunctioning. Accordingly we hold that the petitioner has a clear legal right to have W.Va.Code, 22-2-42(a) [1977] enforced exactly as it was written.

B

Presence of Men Inby During Movement of Equipment
In order to understand petitioner's next ground for relief it is necessary briefly to explain the term "inby" and the term "outby." Although the Court boasts no particular expertise in mining, it appears from the record that most underground coal mines have a ventilating system which circulates air. The term "inby" is a technical mining term which refers to the area from a designated point in toward the face of a mine. Conversely, the term "outby" refers to the area from a designated point out toward the outside of a mine.
W.Va.Code, 22-2-6 [1971] provides that no person shall be permitted to be "inby" of mining equipment being transported or trammed underground. We find that the statutory language provides no exception when mining equipment is being moved although the immediate predecessor of respondent Director issued a so-called "interpretation" of Code 22-2-6 [1971] which emasculated its requirements. This interpretation provided as follows:
Continuous miners, loading machines, cutting machines, shuttle cars, coal drills, roof bolters, head drives and tail drives of long wall equipment and equipment similar to the above being transported or trammed in areas of active workings when energized trolley wires or trolley feeder wires are present, other than ordinary sectional movements, shall be transported or trammed by qualified personnel under the supervision of a certified foreman. No person shall be permitted to be inby the equipment in the ventilating split that is passing over such equipment except those actively engaged in the movement of such equipment.

Track mounted equipment, normally operating on track and if hydraulically operated containing fire resistant hydraulic fluid is excepted. This includes but is not limited to such equipment as track-mounted roof bolters, track cleaner, track cutters, water-cars, fire-cars, track-mounted timbering machines and rock dusters. [emphasis supplied by the Court]
. . . . .
The interpretation provides for the application of the statute only "when energized trolley wires or trolley feeder wires are present" thus permitting men to be inby while equipment is being moved if the trolley wires are deenergized. The second paragraph provides an exception for all fire-resistant, hydraulically operated, track-mounted equipment. We find that the statutory requirement that equipment should not be moved with men inby is clear and unambiguous and that its intention is to remove men from locations which are potentially dangerous.
The respondent admits that he continues to permit West Virginia coal operators to follow his predecessor's interpretation and the evidence indicates that in the Powellton mines roof bolters, shuttle cars, and other heavy equipment are moved with men inby the equipment in the ventilating split passing over the equipment. Cable fires, panel fires, and other fires are frequent occurrences in the mines. If there is a cable fire, and the miners are inby, death can result. Smoke inevitably travels with the air, and a small amount of the toxic cable smoke can suffocate an entire section.
We hold that petitioner has a right to have Code, 22-2-6 [1971] enforced exactly as it was written by the Legislature, and while we recognize that there may be a question as to what constitutes "equipment" in the sense intended by the statute, equipment certainly means all *498 heavy equipment which in any way has a potential for creating a greater than ordinary risk of fire while it is being moved.

C

Emergency Transportation
Finally the petitioner alleges that the Director has failed to enforce W.Va.Code, 22-2-60(g) [1977] which provides that each section of the mine using or serviced by track-mounted or rubber tired equipment shall have "readily available" a vehicle which can be used promptly to remove a person in case of injury. The respondent Director originally limited the meaning of "readily available" by issuing an interpretation of this statute on 27 December 1977 saying that transportation equipment could legally be located anywhere within the 600 foot perimeter of the nearest working face of the track or haulway entry. Allegedly, the coal industry then communicated with the respondent Director and requested that the requirement be further relaxed. On 17 March 1978, the Director declared that the emergency vehicle could lawfully be located anywhere capable of reaching the working section within twenty minutes.
This interpretation met with the miners' disfavor and was rescinded on 18 April 1978 pending an opinion by the West Virginia Attorney General on its legality. It is unclear whether the "600 foot" interpretation, which petitioner does not contest, became effective again. Seemingly, the "20 minute" interpretation is a moot issue. However, since petitioner did not alleged violation of Code, 22-2-60(g), but rather expressed fear that current satisfactory compliance would be jeopardized by lenient interpretation, we feel compelled to comment on the rescinded interpretation in light of its possible successors.
It is readily admitted by all parties that mining is West Virginia's most dangerous industry. Miners are routinely injured in any given mine and when a fire occurs, many miners can die if immediate access to transportation is not available. Furthermore, it is important in saving lives that medical attention be immediately available, and without transportation from the section to the portal, valuable time is lost, often making the difference between life and death.
If an individual who has been seriously injured must wait 20 to 40 minutes before getting medical attention, his life is needlessly in jeopardy. Without transportation on the section, W.Va.Code, 22-2-60(g) [1977] is entirely emasculated when it requires that the vehicle be "readily available." By its plain terms the expression "readily available" means that there should be no substantial time lag between an injury and the arrival of a suitable transportation vehicle. Accordingly, we note that a vehicle which is located twenty minutes from the site of a potential accident is not "readily available."

III
As we have found that the Director has failed to perform the duties imposed upon him by statute, either by not enforcing a clear and unambiguous statutory mandate according to its literal meaning, or by authorizing deviations from clearly mandated standards through unwarranted "interpretations" of the statutory language, the question then arises concerning the extent of the remedy available to the petitioner. Petitioner has demonstrated that two statutory provisions, W.Va.Code, 22-2-42(a) and W.Va.Code, 22-2-6, concerned in this case have not been enforced in the Powellton mines in Logan County and we hold that the petitioner has made a case for a writ of mandamus requiring the Director to enforce those Code sections in the Powellton mines.
On the other hand, it would not serve the mining industry for us to issue a blanket writ of mandamus that the Director shall enforce all of the mine laws throughout the State because that is the same mandate given him by W.Va.Code, 22-1-4 [1977] and, absent a factual showing to the contrary, it is presumed that he is diligently pursuing that duty. Code, 22-1-4 [1977] obviously implies substantial discretionary *499 power in the Director, and like any other officer charged with the administration of the law, he is expected to administer the provisions of the Code relating to mine safety according to the clear intent of the statutes combined with the application of common sense under specific circumstances. Therefore the relief granted in this writ of mandamus is limited to the invalidation of any rules or regulations which would emasculate the clear intent of the unambiguous Code sections under review, and to requiring that with regard to the six Powellton mines which are the subject of this proceeding the Director proceed to enforce the statutes in a way not inconsistent with this opinion.
Accordingly the writ of mandamus prayed for in the petition, as moulded by the Court, is awarded.
Writ as moulded by the Court awarded.
MILLER, Justice, concurring:
I concur with the majority that W.Va. Code, 22-2-42(a), relating to communication facilities in a mine, and W.Va.Code, 22-2-6, requiring removal of personnel inby the equipment in the same ventilating split, are mandatory statutes which the Director of the Department of Mines is required to enforce under W.Va.Code, 22-1-4.[1] However, I am unable to agree with several statements made by the majority with regard to the writ of mandamus.
Contrary to the suggestion of the majority that we are ex cathedra broadening the writ for the good of the public, the reason the writ of mandamus will lie is that the two statutes are mandatory in their terms and do not involve discretion. Stated another way, the Director has a ministerial duty to enforce the statutes. Our cases are legion holding that where a duty is nondiscretionary or ministerial on the part of a governmental official or body, mandamus will lie to compel performance. State ex rel. Anderson v. Board of Education of Mingo County, W.Va., 233 S.E.2d 703 (1977); State ex rel. Goodwin v. Rogers, W.Va., 217 S.E.2d 65 (1975); Delardas v. County Court of Monongalia County, 155 W.Va. 776, 186 S.E.2d 847 (1972); State ex rel. Rhodes v. West Virginia Department of Highways, 155 W.Va. 735, 187 S.E.2d 218 (1972); Humphrey v. Mauzy, 155 W.Va. 89, 181 S.E.2d 329 (1971); State ex rel. Hughes v. Board of Education of Kanawha County, 154 W.Va. 107, 174 S.E.2d 711 (1970), appeal dismissed for want of jurisdiction, 403 U.S. 944, 91 S.Ct. 2274, 29 L.Ed.2d 854 (1971); State ex rel. Gengo v. Cudden, 153 W.Va. 190, 168 S.E.2d 541 (1969); State ex rel. Linger v. Board of Education of Putnam County, 152 W.Va. 379, 163 S.E.2d 790 (1968); State ex rel. Greenbrier County Airport Authority v. Hanna, 151 W.Va. 479, 153 S.E.2d 284 (1967).
There is no question that the plaintiff, Danny Walls, has standing to bring the action. He alleges that he works in a coal mine which is not complying with the statutes and that the noncompliance has been brought to respondent's attention. He, therefore, is directly affected by the mandatory statutory provision designed for his protection, as well as that of other coal miners. He also alleges that he is President of Local 8217 of the United Mine Workers of America. This representative capacity also gives him a special interest to seek the enforcement of mandatory mine safety laws designed to protect the class he represents. Moreover, where the right sought to be enforced is a public one, mandamus can be sought by any citizen, taxpayer or voter. State ex rel. Brotherton v. Moore, W.Va., 230 S.E.2d 638 (1976); State ex rel. W. Va. Lodge, Fraternal Order of Police v. City of Charleston, 133 W.Va. 420, 56 S.E.2d 763 (1949); Prichard v. DeVan, 114 W.Va. 509, 172 S.E. 711 (1934); State ex rel. Matheny v. County Court of Wyoming County, 47 W.Va. 672, 35 S.E. 959 (1900).
*500 Because the petitioner seeks to enforce the mandatory statutory obligation which the Director is required to administer, the majority is mistaken when it assumes the doctrine of exhaustion of administrative remedies comes into play.
Here, the two statutes are mandatory and the Director has no discretion in enforcing their terms. The administrative appeal provisions in W.Va.Code, 22-1-16 and -18, obviously pertain to those decisions and orders which are within the discretionary powers of the Director.
Certainly State ex rel. Gooden v. Bonar, 155 W.Va. 202, 183 S.E.2d 697 (1971), cited by the majority, is not applicable to the exhaustion issue since it did not involve the use of mandamus to enforce a mandatory statutory right which a public official was refusing to obey. Gooden involved a State trooper who claimed he had been illegally fired in violation of his due process rights and who sought to be reinstated through mandamus.
Implicit in most mandamus actions brought against a governmental body to compel it to comply with a mandatory duty is the argument that the relator could pursue his action by invoking another remedy. This Court has entertained mandamus in any number of such cases and never required a relator to exhaust his administrative or other alternative remedies. See, e. g., State ex rel. Allstate Insurance v. Union Public Service District, 151 W.Va. 207, 151 S.E.2d 102 (1966) (mandamus to compel rate increase on utility with no requirement of exhausting Public Service Commission remedy); State ex rel. Wheeling Downs Racing Association v. Perry, 148 W.Va. 68, 132 S.E.2d 922 (1963) (issue of right to tax refund and no requirement that relator pursue refund statute); State ex rel. Red Jacket Coal Corp. v. Stokes, 142 W.Va. 126, 94 S.E.2d 634 (1956) (mandamus on erroneous computation of charges by Workmen's Compensation Commissioner); Puritan Coal Corporation v. Davis, 130 W.Va. 20, 42 S.E.2d 807 (1947) (mandamus to compel unemployment reclassification).
The reason exhaustion of administrative remedies is not applicable is the presence of a clear legal duty coupled with the fact that any alternative remedy is not as adequate. Adequacy is often equivalent to expeditiousness. This principle has become further confused by the majority's pronouncement that: "The ancient rule with regard to mandamus is that the writ will lie where the petitioner's remedies at law are inadequate, State ex rel. Kanawha Co. Board of Ed. v. Dyer, 154 W.Va. 840, 179 S.E.2d 577 (1971), . . ." [Majority Opinion, 251 S.E.2d at 495]
Nothing in Dyer nor in any mandamus case which I have found supports the rule that mandamus lies solely because the petitioner's remedies at law are inadequate. There is a rule which qualifies the right to mandamus, and that is that if there exists another equally beneficial, convenient and effective remedy, mandamus will not lie. Dyer spoke to this rule and found that although the relator could have appealed the adverse decision to the courts, this was not an effective alternative, stating:
"In State ex rel. Simon v. Heatherly, 96 W.Va. 685, 123 S.E. 795 (1924), it was held that the `true test is whether there is another remedy equally convenient, beneficial and effective. If so, mandamus will not lie. Here there is a remedy provided by a so-called appeal; but, while it may be effective, yet it is not as convenient or beneficial.' This is the second syllabus point of Stowers v. Blackburn, 141 W.Va. 328, 90 S.E.2d 277 (1955):
"`Mandamus will not be denied because there is another remedy, unless such other remedy is equally beneficial, convenient and effective.'" [154 W.Va. at 853, 179 S.E.2d at 585]
The majority opinion thus engenders two errors in our law of mandamus. First, by suggesting that the doctrine of exhaustion of administrative remedies is a qualification to the right to obtain mandamus. Clearly, our law does not recognize such a qualification except as it may be a part of the general qualification that if there exists an equally convenient, beneficial or effective remedy, mandamus will not lie. Obviously, an administrative remedy with a further *501 appeal to the circuit court is, as noted in Dyer, not an equally effective remedy to an original mandamus action in court.
The second error is the assertion that if there is no adequate remedy at law, mandamus will lie. The lack of an adequate remedy at law is not in and of itself a ground for mandamus. The traditional requirements for mandamus are stated in State ex rel. Damron v. Ferrell, 149 W.Va. 773, 143 S.E.2d 469 (1965), and in many of our other mandamus cases:
"The general rule is that the writ of mandamus will not issue unless three elements coexist  (1) the existence of a clear right in the petitioner to the relief sought; (2) the existence of a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and, (3) the absence of another adequate remedy at law. State ex rel. Zagula v. Grossi, 149 W.Va. 11, 138 S.E.2d 356; State ex rel. McDaniel v. Duffield, 149 W.Va. 19, 138 S.E.2d 351; State ex rel. Bronaugh v. City of Parkersburg, 148 W.Va. 568, 136 S.E.2d 783; State ex rel. Vance v. Arthur, 142 W.Va. 737, 98 S.E.2d 418."
Finally, I find the majority's position at odds with the recent case of McGrady v. Callaghan, W.Va., 244 S.E.2d 793 (1978). In my dissent in McGrady, I pointed to the statutory right to mandamus under the strip mine law, W.Va.Code, 20-6-11, as providing clear authority to uphold a mandamus action predicated on the failure of the Director of the Department of Natural Resources to enforce mandatory statutory provisions. In the present case there is no express statutory provision for a mandamus remedy, and yet the majority has no difficulty in awarding mandamus under our general mandamus law.
McGrady turned on the point that the relators had failed to exhaust their administrative remedy. It is obvious under the foregoing law that the exhaustion was not required as it was not as convenient, beneficial nor as expeditious as mandamus.
My only wish is either the majority make some rational effort to distinguish McGrady, or concede, as I think they must, that it is erroneous in light of today's opinion.
I am authorized to state that McGRAW, J., joins with me in this concurring opinion.
NOTES
[1] W.Va.Code, 22-2-42(a) [1977] provides:

Telephone service or equivalent two-way communication facilities shall be provided in all mines at least one of which shall be in service at all times as follows:
"(a) A telephone or equivalent two-way communication facility shall be located on the surface within five hundred feet of all main portals, and shall be installed either in a building or in a box-like structure designed to protect the facilities from damage by inclement weather. At least one of these communication facilities shall be at a location where a responsible person who is always on duty when men are underground can hear the facility and respond immediately in the event of an emergency. `Two-way communication facility' shall mean a system maintained to allow voice contact to come in and out of the working section at all times."
[2] W.Va.Code, 22-2-6 [1971] provides:

"Mining equipment being transported or trammed underground, other than ordinary sectional movements, shall be transported or trammed by qualified personnel under the supervision of a certified foreman. When equipment is being transported or trammed, no person shall be permitted to be inby the equipment in the ventilating split that is passing over such equipment. To avoid accidental contact with power lines, face equipment shall be insulated and assemblies removed, if necessary, so as to provide clearance."
[3] W.Va.Code, 22-2-60(g) [1977] provides:

"Each working area of the mine not serviced by track-mounted or rubber-tired vehicles which uses conveyor belts for removal of coal shall be equipped with a special capsule in which an injured person can be placed and transported on the belt to the surface or to other transportation facilities. The director shall within nine months of the effective date of this section [July 8, 1977] promulgate standards and guidelines as to what such `special capsule' as used in this subsection shall include. Each section of the mine using or serviced by track-mounted or rubber-tired equipment shall have readily available a vehicle which can be used to promptly remove a person in case of injury."
[4] W.Va.Code, 22-1-18 [1971] provides for an appeal from any order or decision issued by the Director in either the Circuit Court of Kanawha County or the circuit court of the county in which the mine affected is located and W.Va. Code, 22-1-16 [1971] provides for administrative review of violation orders issued pursuant to W.Va.Code, 22-1-14 [1971].
[5] The general rule is that mandamus will not lie if administrative remedies are not exhausted, State ex rel. Gooden v. Bonar, 155 W.Va. 202, 183 S.E.2d 697 (1971), or if another adequate remedy is available, Hall v. Protan, 156 W.Va. 562, 195 S.E.2d 380 (1973). However, this Court has recognized that in some situations pursuant of other remedies would be unavailing. Mountaineer Disposal Service, Inc. v. Dyer, 156 W.Va. 766, 197 S.E.2d 111 (1973). This is especially true when an administrative officer has a nondiscretionary duty and it appears that, under misapprehension of law, he refuses to recognize the nature and scope of that duty. Mountaineer Disposal, supra; Walter v. Ritchie, 156 W.Va. 98, 191 S.E.2d 275 (1972). When the administrative officer and his petitioners disagree on the entire legal philosophy of his duties, piecemeal litigation of pigeonholed issues will not serve to resolve their basic differences; it is in this circumstance that mandamus should lie. The flexibility of the mandamus remedy has been demonstrated by this Court's creation and extension of a special form of mandamus in election cases. State ex rel. Maloney v. McCartney, W.Va., 223 S.E.2d 607 (1976); Benson v. Robertson, W.Va., 226 S.E.2d 447 (1976); State ex rel. Alsop v. McCartney, W.Va., 228 S.E.2d 278 (1976). As this writer noted in State ex rel. Maloney, supra, "[t]he glory of the Anglo-American common law is its capacity to respond to new and unforeseen circumstances by the adaption of old forms of action to new and changing conditions." 223 S.E.2d at 615.
[6] Our decision is in line with McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) where the United States Supreme Court noted that the doctrine of exhaustion of administrative remedies is subject to numerous exceptions in light of its purposes. Respondent maintains that four institutional interests discussed in McKart [(1) avoidance of premature interruption of the administrative process; (2) recognition that administrative agencies possess special expertise; (3) respect for administrative autonomy by allowing an agency to discover and correct its own errors; and (4) prevention of weakening administrative agencies by encouraging the public to ignore agency procedures] apply here to bar issuance of a writ of mandamus. We disagree and find those enumerated interests to be inapplicable here: (1) the administrative process is not being prematurely interrupted because only a question of law exists as the facts are not in dispute, and the court is assuming its proper role; (2) while the Director has an expertise in mining, when he exceeds the authority given to him by the Legislature, the courts may intervene, especially where there is no factual dispute; (3) the Director has had ample opportunity to correct his own errors; and, (4) it is unlikely that the West Virginia Department of Mines will suffer a loss of respect.
[1] The material part of W.Va.Code, 22-1-4, reads:

"The director of the department of mines shall have full charge of the department. He shall have the power and duty to:
"(1) Supervise and direct the execution and enforcement of the provisions of this chapter." [emphasis added]