297 S.E.2d 430

**STATE of West Virginia ex rel. Rush BUTCHER**

v.

**A. James MANCHIN, Secretary of State, et al.**

No. 15682.

Supreme Court of Appeals of West Virginia.

Decided Oct. 6, 1982.

Dissenting Opinion Oct. 29, 1982.

McGraw, J., dissented and filed an opinion.

Callaghan, Callaghan, Ruckman & Vaughan and Timothy R. Ruckman, Richwood, for relator.

Chauncey H. Browning, Atty. Gen. and Gregory W. Bailey, Deputy Atty. Gen., Charleston, for respondents.

NEELY, Justice:

Rush Butcher, the petitioner in this mandamus action, wants to be a candidate for the West Virginia House of Delegates for the Twenty-sixth Delegate District at the November 1982 general election. The Twenty-sixth Delegate District is comprised of the counties of Nicholas and Webster. At the June 1982 primary election no Republican Party candidate filed for the nomination. Mr. Butcher contacted the Republican Executive Committees of Nicholas and Webster Counties and advised them that he would like to be the Republican nominee for the House of Delegates at the general election.

At the time Mr. Butcher expressed his desire to be a candidate, there was no Republican Executive Committee for the Twenty-sixth Delegate District and no chairman of such committee. No candidates had filed for Delegate District Executive Committee for the twenty-sixth district at the June 1982 primary election and no persons had been appointed to fill the vacancies. Consequently, the only political machinery for the Republican Party that was in place at the time Mr. Butcher sought to be placed on the ballot consisted of the Republican Executive Committees for Nicholas and Webster Counties.

After Mr. Butcher expressed his desire to be a candidate, John LeRose, Chairman of the Republican Executive Committee for Nicholas County, and George S. Marple, Chairman of the Republican Executive Committee for Webster County, agreed to nominate Mr. Butcher as Republican House of Delegates candidate for the November 1982 election. The office of the respondent Secretary of State was contacted concerning the proper procedure for nominating a candidate for the House of Delegates in these circumstances, and the Secretary of State's office advised that it would be proper for the two county chairmen to file a Certificate of Nomination with the Secretary of State's office under *W. Va. Code*, 3–5–19 [1973].

Acting upon this advice from the Secretary of State's office, the two county chairmen made a Certificate of Nomination nominating Mr. Butcher, which was signed by both chairmen and filed in the office of the Secretary of State on 2 September 1982 along with the candidate's Certificate of Announcement and a filing fee of $33.00. The Secretary of State's office accepted the nomination of Mr. Butcher and certified him as Republican candidate for the House of Delegates for the Twenty-sixth Delegate District.

Sometime after 2 September 1982, a complaint was made to the Secretary of State by the Democratic Party candidate for the House of Delegates from the Twenty-sixth Delegate District concerning Mr. Butcher's certification. In response to this complaint the Secretary of State requested an Attorney General's opinion. The Attorney General indicated that the nominating procedure used to place Mr. Butcher's name on the ballot was improper under *W. Va. Code*, 3–5–19 [1973]. The Attorney General advised in his opinion that the *Code* requires a nomination for the House of Delegates be filled by either the party Executive Committee or the Chairman of that committee for the "political division in which the vacancy occurs." *Code*, 3–5–19 [1973]. Consequently, the Attorney General concluded, "the political division for the House of Delegates is the Delegate District" and so if there was no Republican Delegate District Committee and no Chairman of such a committee, Mr. Butcher could still not be nominated by the concurrence of the Chairmen of the Republican Executive Committees for Nicholas and Webster Counties.

On 23 September 1982 the Secretary of State wrote to Mr. Butcher and informed him that the Secretary of State must order his name be omitted from the ballot. The Ballot Commissioners of Nicholas and Webster Counties, acting upon the advice of the Secretary of State, refused to place Mr.

Butcher's name on the ballot for the November 1982 general election and Mr. Butcher came to this Court to seek a writ of mandamus to compel the Secretary of State and the Ballot Commissioners to place his name on the ballot. We agree with the position taken by the Attorney General and the respondents and we deny relief.

The procedure for making a nomination for the House of Delegates (other than by nomination at a party primary election) is set forth in *W. Va. Code*, 3-1-9 [1980] and 3-5-19 [1973]. *Code*, 3-1-9 [1980] provides in part:

> At such primary election, the voters of each political party in each county shall elect one male and one female member of the party's executive committee of the congressional district, of the senatorial district in which such county is situated and the delegate district in which such county is situated if such county be situated in a delegate district....

*W. Va. Code*, 3-5-19 [1973] provides in part as follows:

> If any vacancy shall occur in the party nomination of candidates for office, caused by the withdrawal, failure to make a nomination for the office at the primary election, or otherwise, it may be filled and the name of the candidate certified by the executive committee of the political party for the political division in which the vacancy occurs. If such vacancy be not filled by the executive committee by the sixty-fifth day next preceding the date of the election, it shall be lawful for the chairman of the political party executive committee for the political division to fill such vacancy, make a certificate thereof, and file the same with the officer with whom the original certificate of nomination was or might have been regularly filed....

█ It is obvious that the plain language of the two applicable statutes requires that a party nomination for the House of Delegates (other than at a party primary election) be made by the Executive Committee of the Delegate District or by the Chairman of that committee. Where a statute is plain and unambiguous it must be applied and not construed. *Spradling v. Hutchinson*, 162 W.Va. 768, 253 S.E.2d 371 (1979); *Walls v. Miller*, 162 W.Va. 563, 251 S.E.2d 491 (1978). While this Court recognizes the legitimate interest of the petitioner in offering himself as a candidate for the House of Delegates and the equally legitimate interest of the Republican Party in having a candidate for the House of Delegates on the November ballot, we cannot acquiesce in the use of an illegal procedure to make a nomination, regardless of how much such a procedure comports with common sense.

Another part of *Code*, 3-1-9 [1980] provides:

> Vacancies in the party's executive committee of a congressional district, senatorial, delegate district or county shall be filled by the party's executive committee of the county in which such vacancy exists, and shall be for the unexpired term.

Consequently, the party executive committees for the counties of Nicholas and Webster could have filled the vacancies existing in the Delegate District Executive Committee and then that committee or its chairman could have made a proper nomination. While the procedure is somewhat cumbersome, it is, nonetheless, the procedure mandated by our Legislature and it is the duty of this Court to enforce the legislative policy.

Accordingly, for the reasons set forth above the writ of mandamus for which the petitioner prays is denied.

Writ denied.

McGRAW, Justice, dissenting:

The majority opinion represents the quintessential example of the elevation of form over substance, with the predictable result of justice being sacrificed to procedural requirements. The primary responsibility of this Court is the administration of *justice, see* W.Va. Const. art. III, § 17, not blind adherence to amorphous legal precepts which leads to unreasonable and manifestly *unjust* results.

The majority recognizes the legitimate interest of the petitioner and his political

party in having his name placed on the ballot, and concedes that under the circumstances presented by this case, it would be inherently unreasonable to require the county executive committees to fill the vacancies in the district committee prior to nominating the petitioner for office. Yet this is precisely the procedure the majority requires to be followed, "regardless of how much such a procedure comports with common sense." Majority opinion, *supra*, 171 W.Va. at 26, 297 S.E.2d at 432.

Access to the ballot is a fundamental right guaranteed by both our state and federal constitutions. U.S. Const. amend. I; W.Va. Const. art. III, § 7. *See Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); *West Virginia Libertarian Party v. Manchin*, 165 W.Va. 206, 270 S.E.2d 634 (1980). The Legislature may enact legislation in aid of this fundamental right, but it may not arbitrarily restrict access to the ballot. *See Brewer v. Wilson*, 151 W.Va. 113, 150 S.E.2d 592 (1966). Indeed, our jurisprudence is replete with legislative devices which did not pass constitutional muster because they denied ballot access. *See, e.g., Benjamin v. Manchin*, No. 15646 (W.Va. Sept. 20, 1982) (per curiam order); *West Virginia Libertarian Party v. Manchin, supra; Marra v. Zink*, 163 W.Va. 400, 256 S.E.2d 581 (1979); *State ex rel. Piccirillo v. City of Follansbee*, 160 W.Va. 329, 233 S.E.2d 419 (1977).

Although no constitutional challenge has been raised in this proceeding with regard to W.Va.Code §§ 3–1–9 and 3–5–19, the fundamental right of the petitioner to ballot access must be considered in the award or denial of the writ. And when fundamental rights are weighed against unreasonable and restrictive legislative enactments, our organic law instructs that fundamental rights must be given precedence. W.Va. Const. art. III, § 20. I believe that under the facts presented by this case, the petitioner has demonstrated substantial compliance with the cumbersome requirements enacted by the Legislature. In the interests of justice, I would grant the writ.