300 S.E.2d 116

**Garnett McMELLON, et al.**

v.

**Larry C. ADKINS, Clerk, etc., et al.**

**No. 15730.**

Supreme Court of Appeals of West Virginia.

Feb. 15, 1983.

---

Boyce Griffith, Hamlin, Daniel F. Hedges, Charleston, for petitioners.

Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Charles F. Bagley, Jr. and Robert K. Emerson, Huntington, for respondent-Ashland Land & Development Co. and Allegheny Land Co.

NEELY, Justice:

This imaginative proceeding in mandamus is an attempt to expand the original jurisdiction of the Supreme Court of Appeals. The petitioners own land in Lincoln County and feel aggrieved by oppressive terms contained in coal leases that either they or their predecessors entered into with the respondent Ashland Land & Development Company and its predecessor Allegheny Land Company. In order to comply with the technical requirement of mandamus that the action be against a public official, the petitioners ask us to compel the clerk of the Lincoln County Commission to strike from the land books their leases along with all other leases containing similarly oppressive terms.

Petitioners allege that they were either old, ignorant, or misled when they entered into the leases in question; however, the thrust of their complaint is that the clauses in the leases are so one-sided as to be *prima facie* unconscionable and, therefore, invalid for that reason alone. Among such allegedly unconscionable clauses are included: (1) a provision for an unending term at the option of the lessee; (2) a right in the lessee to terminate the lease at any time upon 30 days notice; (3) a right in the lessee to control the lessor's property with a virtually unqualified right to damage that property and use it in any conceivable way to dump refuse, cut timber, and build roads; (4) a right in the lessee to use the property for the mining of coal on adjacent property without paying compensation in excess of a limited minimum royalty; and (5) absolution of the lessee from all responsibility for representations, warranties, etc. made by any representative of the lessee unless included in the written agreement.

Petitioners admit that they are seeking a "declaratory judgment" pursuant to *W.Va. Code*, 55–13–1 [1941], but they argue that such a proceeding may be brought originally in this Court if it can be framed within a writ of mandamus. *W.Va.Code*, 55–13–1 [1941] concerning declaratory relief provides:

> Courts of record *within their respective jurisdictions* shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree. [Emphasis supplied by Court].

The West Virginia Supreme Court of Appeals is a Court of limited jurisdiction. *W.Va. Const.*, art. VIII, § 3, limits our original jurisdiction to proceedings in habe-

as corpus, mandamus, prohibition and certiorari.

 *W. Va. Code,* 55–13–1 [1941] does not confer original jurisdiction to grant declaratory relief upon the Supreme Court of Appeals. In syllabus point 1 of the recent case of *Smith v. W. Va. State Board of Education,* 170 W.Va. 593, 295 S.E.2d 680 (1982), we reiterated the fundamental requirements for the issuance of a writ of mandamus:

'A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.' Syllabus Point 2, *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969).

*Accord, State ex rel. Damron v. Ferrell,* 149 W.Va. 773, 143 S.E.2d 469 (1965). In the case before us the petitioners have failed to demonstrate any one of the three elements required for a writ of mandamus.

## I

 Initially, the petitioners cite no statute authorizing the Clerk of a County Commission to pass upon the validity of an instrument offered to him or her for recordation. Our own research reveals that *W. Va. Code,* 7–1–3 [1923] and *W. Va. Code,* 39–1–2 [1933] *et seq.* require clerks of county commissions to record all deeds and contracts that are properly acknowledged and are otherwise in proper legal *form.* Contrary to petitioners' assertion that they have a clear legal right to have the clerk note in the records that the leases in question are invalid, we conclude that any notation by a clerk amounting to a legal conclusion regarding the legal effect of duly recorded writings is entirely *ultra vires.* Furthermore, even if we were not confronted with the insurmountable objection that a clerk is not authorized to pass upon the substantive legal validity of a writing, we would be compelled to conclude that the petitioners have not demonstrated the existence of a *clear* legal right.

## II

 The law governing the enforceability of unconscionable contracts consists primarily of equitable principles that have meaning only in the context of specific factual circumstances. A representative example of our vague holdings in unconscionable contract cases is contained in *Starcher Brothers v. Duty,* 61 W.Va. 373, 56 S.E. 524 (1907), whose syllabus point 1 states:

Specific performance of an option contract for the purchase of land will not be decreed in favor of the optionee against the optionor, even though the optionee is free from any intention to take an unfair advantage, if the actual result would be an inequality resulting from ignorance or inexperience, or where the terms of the contract are so indefinite, or assented to with such lack of caution, that the enforcement of the contract would produce an inequality not foreseen by the defendant.

This is hardly the type of law that can be applied in the abstract, as petitioners would have us do now. *See also: Ashland Oil, Inc. v. Donahue,* 159 W.Va. 463, 223 S.E.2d 433 (1976) where the statutory provision concerning unconscionable contracts under the uniform commercial code is illuminated.

The respondents in the case before us assert that the one-sided provisions in the lease agreements are not unconscionable because of the difficulty of putting together economically viable tracts for coal mining purposes. In addition, the respondents directly controvert the petitioners' allegations that they or their predecessors in title were misled and taken advantage of because they were ignorant, inexperienced or in one case, elderly.

This Court has before it no record that would illuminate: (1) the circumstances surrounding the execution of the leases; (2) the generally accepted terms and conditions under which such leases are executed by experienced and knowledgeable parties; (3) the underlying economic justification for the terms incorporated into the leases; or (4) the actual level of understanding and

business experience of the lessors at the time the leases were executed.

Since no provision of a contract is *per se* unconscionable unless it is contrary to public policy, the general rules regarding unconscionable contracts are applied only after a detailed analysis of the facts of each case.[1] For example, a clause in a contract that might be unconscionable if the contract were between a large corporation and an admittedly ignorant and inexperienced individual could be perfectly acceptable if it appeared in a contract between two experienced corporations, which had knowledgeably bargained for the clause with the advice of competent counsel. *Accord: Board of Education v. Harley Miller,* 160 W.Va. 473, 236 S.E.2d 439 (1977). We therefore conclude that the alleged unconscionability of a contract is not a matter sufficiently capable of proof from the four corners of the document to satisfy the "clear right" requirement of the writ of mandamus.

### III

Finally, the petitioners have failed to show us that they do not have another adequate available remedy. While this Court has admitted in *Walls v. Miller,* 162 W.Va. 563, 251 S.E.2d 491 (1978) that we have enlarged the scope of mandamus beyond that contemplated by our immediate predecessors, nonetheless, our enlargement of mandamus has been to permit the expeditious litigation of important questions of public policy. *See, e.g., Perry v.*

*Barker,* 169 W.Va. 531, 289 S.E.2d 423 (1982) (wage payment bond); *Snyder v. Callaghan,* 168 W.Va. 265, 284 S.E.2d 241 (1981) (mine safety); *E.H. v. Matin,* 168 W.Va. 248, 284 S.E.2d 232 (1981) (care of mental patients in state hospitals); *State ex rel. Barker v. Manchin,* 167 W.Va. 155, 279 S.E.2d 622 (1981) (mine safety); *Walls v. Miller,* 162 W.Va. 563, 251 S.E.2d 491 (1978) (mine safety); *State ex rel. Brotherton v. Moore,* 159 W.Va. 934, 230 S.E.2d 638 (1976) (management of industrial home for girls). The case before us involves only issues that normally arise in routine civil litigation. Private disputes over property are not matters of extraordinary public importance or matters that affect the lives and safety of our people in general. Not only is the remedy of a declaratory judgment in the local circuit court available, in light of the need for concrete factual development of the circumstances surrounding the entry of the parties into the contracts in question, declaratory judgment is the superior remedy.

Accordingly, the rule to show cause previously issued by this Court is discharged and the writ of mandamus for which the petitioners pray is denied.

Writ denied.

---

1. The Uniform Commercial Code, which as statutorily codified in *W.Va.Code,* 46–2–302 [1963] permits courts to refuse to enforce, wholly or in part, contracts that the court finds unconscionable, notes in the official comment that the "basic test [of unconscionability] is whether, in the light of the general commercial background and the commercial needs of a particular trade or case, the clauses are ... unconscionable...." As Professor Williston states, there is in the Code "affirmative provision for procedures which necessarily require a focusing on the particular aspects of each discrete transaction." S.

Williston, *A Treatise on The Law of Contracts,* (3d ed., § 1763A at 216). "The framers of the Code naturally expected the courts ... to pour content into it on a case-by-case basis," *Kugler v. Romain,* 58 N.J. 522, 279 A.2d 640 (1971), *cited in* Williston, *supra,* at 215–16, is the conclusion of the Supreme Court of New Jersey. Although in the case before us we are concerned with a contract involving land and not a commercial contract, nonetheless, the principles are largely the same. The difference is only that in a commercial context the principles are reflected in a statute.