# Virginia Department of Labor and Industry

## v.

# Westmoreland Coal Company

Record No. 831786

March 6, 1987

Present: All the Justices

*John B. Purcell, Jr., Assistant Attorney General (Gerald L. Baliles, Attorney General; John S. Morris, III, Assistant Attorney General,* on briefs), for appellant.

*Scott L. Messmore (F. Thomas Rubenstein; Thomas C. Means; Crowell & Moring,* on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

In this appeal, we must interpret Code § 45.1-81(a), a mine safety statute relating to communications that provides:

> Telephone service or equivalent two-way communication facilities shall be provided between the top and each landing of main shafts and slopes. A telephone or equivalent two-way communication facility shall be located on the surface within five hundred feet of all main portals, and shall be installed either in a building or in a box-like structure designed to protect the facilities from damage by inclement weather. At least one of these communication facilities shall be at a location where a responsible person who is always on duty when men are underground can hear the facility and respond immediately in the event of an emergency.

Westmoreland Coal Company (Westmoreland) operates two coal mines, "Wentz No. 1" and "Wentz B." The main portals of the two mines are approximately 1700 feet apart. Relying upon federal requirements and Code § 45.1-81(a) as it was interpreted by an Attorney General of Virginia in 1981 (the 1981 opinion), Westmoreland installed a communications system for its mines by locating a telephone within 500 feet of the main portal of Wentz

No. 1 and another telephone within 500 feet of the main portal of Wentz B. A larger, better equipped central communications facility is located at Wentz No. 1 main portal. A "responsible person" mans this facility 24 hours per day.

Another Attorney General rendered a second opinion in 1982 (the 1982 opinion) overruling the 1981 opinion. His interpretation of Code § 45.1-81(a) required Westmoreland to maintain a *manned* facility within 500 feet of the main portal of each mine. As a consequence of the 1982 opinion, Westmoreland brought a declaratory judgment proceeding seeking judicial interpretation of the statute.

The trial court ruled that Westmoreland's communications system complied with Code § 45.1-81(a). It found that Westmoreland maintains a communication facility located within 500 feet of the main portal of each mine and that the Wentz No. 1 communications system, manned 24 hours per day by a responsible person, serves as a central communications facility for both mines. The court rejected the contention of the Virginia Department of Labor and Industry (the Department) that the statute required Westmoreland to station an additional person at the Wentz B facility.

The trial court based its ruling on two independent grounds. First, it found that the General Assembly intended to adopt the federal interpretation of 30 C.F.R. § 75.1600-1, which contains language identical to that in Code § 45.1-81(a). Second, the trial court concluded that Westmoreland's communications system satisfies the plain meaning of Code § 45.1-81(a). The Department appeals.

■ First, we determine whether Code § 45.1-81(a) is clear and unambiguous. If so, the section's plain meaning must be accepted without resort to extrinsic evidence and the rules of construction. *Ambrogi* v. *Koontz*, 224 Va. 381, 386, 297 S.E.2d 660, 662 (1982); *Sanitation Commission* v. *Chesapeake*, 218 Va. 696, 702, 240 S.E.2d 819, 823 (1978).

The Department contends that Code § 45.1-81(a) is unambiguous and its plain language "requires that at all times when men are working underground a communication facility on the surface which is within 500 feet of a main portal of that mine must be manned by a responsible person." As authority for its contention that the plain meaning of Code § 45.1-81(a) supports its position, the Department relies upon the 1982 opinion, 1981-82 Va. Att'y Gen. Rep. 251. In the 1982 opinion, the Attorney General said

that "[t]he term 'at least one of these facilities' refers to the facilities specified in the immediately next preceding sentence, *i.e.*, those within 500 feet of the portal." *Id.* at 252. With no reference to the federal regulation or its interpretation, he concluded that "the manned facility must be one within 500 feet of the main portal to each mine." *Id.*

The Department also relies upon *Walls* v. *Miller*, 162 W. Va. 563, 251 S.E.2d 491 (1978), in which the Supreme Court of West Virginia applied W. Va. Code § 22-2-42(a) (1977), a statute almost identical to Code § 45.1-81(a). The facts in *Walls*, however, are quite different from those in the present case. In *Walls*, the coal company operated seven mines, and a responsible person was no closer than one mile to any of the main mine portals. *Id.* at 568-69, 251 S.E.2d at 496. Moreover, the opinion does not state whether the company maintained an interconnected communications system with a central communications facility or what effect such a system would have had on the decision. Thus, we do not know what the West Virginia Supreme Court would have held had it been presented with facts similar to those in the case at bar. The court did say, however, that:

> The statutory mandate is plain and unambiguous and should be applied and not construed . . . and we see no reason to infer that the Legislature did not mean exactly what it said, namely that there shall be a person within 500 feet of *at least one* main portal who is always on duty while men are working.

*Id.* at 569, 251 S.E.2d at 496. (Emphasis added.)[1]

Westmoreland, reaching a different conclusion, also contends that Code § 45.1-81(a) is unambiguous and that its communications system complies with the section's provisions. Westmoreland claims that the phrase "[a]t least one of these communication facilities" cannot refer to the *one* facility that the second sentence requires to be located within 500 feet of a main portal; otherwise the term "[a]t least one" is meaningless because "only *one* facility within 500 feet is required." (Emphasis in original.) Instead, ac-

---

[1] The emphasized words from this quotation actually suggest a position more aligned with Westmoreland's, rather than the Department's contention that there shall be a person within 500 feet of *every* (not "at least one") main portal.

cording to Westmoreland, the phrase refers to the "communication facilities" required by the first sentence of Code § 45.1-81(a).

Westmoreland relies upon the construction placed on the section by the 1981 Attorney General opinion, 1980-81 Va. Att'y Gen. Rep. 245, and by federal agencies charged with enforcing mine safety laws. In the 1981 opinion, the Attorney General concluded that while Code § 45.1-81(a) requires the installation of a communication facility within 500 feet of all main portals, "[i]n reference to the placement of persons, the only requirement is that 'at least one of these [attended] facilities' be 'at a location' where a responsible individual can respond immediately in the event of an emergency." 1980-81 Va. Att'y Gen. Rep. at 246. Additionally, the Attorney General said:

> The Department of Labor and Industry, Division of Mines and Quarries, adopted [the federal] interpretation after the enactment of § 45.1-81(a) and has enforced the statute in conformity with it.
>
> . . . This conclusion is bolstered by the fact that the Department . . . has consistently ruled that manned facilities which are over five hundred feet from a particular portal are in compliance with § 45.1-81 so long as the attended facility is at a location where a responsible person can respond in the event of an emergency.

*Id.*

The trial court adopted Westmoreland's contention, agreeing with the interpretation given Code § 45.1-81(a) by the Attorney General in 1981 and by federal agencies responsible for mine safety. The court reached this conclusion "based solely on the interpretation of the language in 45.1-81(a)," stating that if the General Assembly had intended to require a person at each communication facility within 500 feet of a main portal, it "should have been specific and said so."

We conclude that Code § 45.1-81(a) *is* ambiguous because it is susceptible to more than one meaning. *See Brown* v. *Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985). The divergent interpretations discussed above demonstrate the difficulty one encounters in trying to ascertain the statute's meaning. Because the section is ambiguous, we, like the trial court, must resort to extrinsic evidence and the rules of construction to determine legis-

lative intent, "the paramount object of statutory construction." *Vollin* v. *Arlington Co. Electoral Bd.*, 216 Va. 674, 678-79, 222 S.E.2d 793, 797 (1976).

In 1976, the General Assembly established the Coal Mine Health and Safety Commission (Safety Commission) to study coal mine health and safety. Senate Joint Resolution No. 63, Acts 1976, p. 1511. After conducting public hearings, the Safety Commission made certain findings and drafted proposed legislation to implement its findings. Two of its general findings are relevant to our inquiry:

> A. It was agreed that many technical changes were necessary in order to conform State law with Federal mining requirements. Such changes may be found throughout the proposed Commission legislation.
>
> . . . .
>
> E. It was agreed that many general safety rules should be codified in order to promote safety in the mines.

One of the Safety Commission's proposed changes related to mine communications systems. Code § 45.1-81(a), as it read at the time of the Study Commission's report, provided that:

> Telephone service or equivalent two-way communication facilities shall be provided between the top and each landing of main shafts and slopes. Adequate communication systems shall be provided to other active sections of the mine.

The Safety Commission recommended that the second sentence of the section be deleted and replaced with the following language:

> A telephone or equivalent two-way communication facility shall be located on the surface within five hundred feet of all main portals, and shall be installed either in a building or in a box-like structure designed to protect the facilities from damage by inclement weather. At least one of these communication facilities shall be at a location where a responsible person who is always on duty when men are underground can hear the facility and respond immediately in the event of an emergency.

The General Assembly enacted into law the precise language the Safety Commission proposed for Code § 45.1-81(a). Moreover, this language is identical to that contained in 30 C.F.R. § 75.1600-1, the federal regulation promulgated in 1973 by the Mining Enforcement and Safety Administration (MESA) of the United States Department of the Interior. At that time, MESA was the federal agency responsible for coal mine safety.

This federal regulation was interpreted by MESA in its publication entitled *Coal Mine Health and Safety Inspection Manual for Underground Mines*, dated June 1974 and published by the United States Government Printing Office for public sale in 1976 (*1974 Underground Manual*). MESA interpreted the provision of 30 C.F.R. § 75.1600-1 as follows:

> *\*75.1600-1 Communication facilities; main portals: Installation requirements.* The second sentence requires that at least one such communication facility be located where a responsible person who is always on duty when men are underground can hear the facility and respond.
> A telephone or equivalent facility at a central location which may be greater than 500 feet from any portal, will satisfy the requirement of the second sentence of Section 75.1600-1 as it applies to multiple-portals of any one mine or a number of mines within a reasonable geographical area, provided a responsible person at the central location can hear the telephone and respond immediately.

MESA's interpretation of the federal regulation has been reaffirmed consistently since 1974 by MESA and its successor agency.

In 1975, for example, MESA's Administrator, responding to an inquiry from the United Mine Workers of America, opined that a centrally manned telephone communications system serving several nearby mines met the requirements of the federal regulations. He said that such a communications system is often superior to an individual at a portal telephone "because the entire resources of a company or community can be directed to a mine emergency more readily from such a center."[2]

---

[2] The Department contends that the trial court erred in admitting the Administrator's letter interpretation (Exhibit 7) because "[t]here is no evidence that any member of the Commission or of the General Assembly was aware . . . of the interpretation . . . prior to the amendment of § 45.1-81." We do not agree.

In 1977, the responsibility for federal mine safety and health regulations was transferred from MESA to the Mine Safety and Health Administration (MSHA) of the United States Department of Labor. *See* 30 U.S.C. § 961 (1982). MSHA revised and reissued the *1974 Underground Manual* on March 9, 1978 (*1978 Underground Manual*), but continued MESA's interpretation of the communications requirement under 30 C.F.R. § 75.1600-1. The *1978 Underground Manual*, like the *1974 Underground Manual*, explains that the regulation permits a centrally manned communications system which serves nearby mines without requiring the stationing of a person at each portal telephone at all times. MSHA has continued to so interpret the federal regulation.[3]

■ When the General Assembly adopts language substantially similar to that of another jurisdiction's regulation, a presumption arises that the legislature also intended to adopt the prior interpretation placed upon the language by the promulgating authority. *See Commonwealth* v. *Huntington*, 148 Va. 97, 116, 138 S.E. 650, 656 (1927). Code § 45.1-81(a), as proposed by the Study Commission, contained language identical to 30 C.F.R. § 75.1600-1, and the General Assembly enacted Code § 45.1-81(a) exactly as proposed. The trial court found that, in enacting Code § 45.1-81(a), the General Assembly intended to conform Virginia law with federal mining requirements and to adopt the federal interpretation of the communications regulation. After reviewing the evidence, we reach the same conclusion.

■ Our conclusion, like the trial court's, also furthers the stated legislative purpose of "promot[ing] safety in the mines." As the Department conceded in oral argument, permitting Westmoreland to station one person at a central location to man an interconnected communications system is as safe as stationing an individual at every main portal telephone.

In exercising its discretion, the General Assembly "is presumed to have been cognizant at the time it acted of all existing facts and circumstances" bearing upon and relating to its enactments. *I.D.A.* v. *La France Cleaners*, 216 Va. 277, 282, 217 S.E.2d 879, 883 (1975). Thus, "a court must look not to what a legislative body . . . knew when it acted, but to what it could have known at that time." *Id.*

[3] The trial court did not, as the Department contends, err in admitting Exhibits 5 and 6, which are Westmoreland's 1982 request for an interpretation of 30 C.F.R. § 75.1600-1 and MSHA's response. These exhibits demonstrate that the federal agency's interpretation of its regulation has been the same from the time of the regulation's adoption until the time the case was heard in the trial court.

Indeed, evidence exists that in the case of an interconnected communications system, one centrally-manned location may be more efficient, and therefore safer, than an individual at every portal. The "responsible person" required by Code § 45.1-81(a), whether centrally located or stationed at a main portal, must remain by the telephone and maintain contact with the emergency response teams and the miners. Neither the central person nor the individual at a single portal telephone can perform on-site rescue activities for which he is not qualified. However, as MESA's Administrator pointed out, all available emergency resources can be directed to an emergency more readily from a central communications system.

Additionally, no danger of a "busy" signal exists if both mines simultaneously attempt to place telephone calls to the "responsible person" in Wentz No. 1. Each mine's communication system is connected by a separate line to the central communications facility.

Moreover, Rule 1 of the "Rules and Regulations Governing Disruption of Communication in Mines" promulgated pursuant to Code § 45.1-104 provides that "[m]ine foremen or their designee shall check the communication system to all sections or part of an underground mine . . . at least once every hour to ascertain if the system is in operation." Thus, the mine foreman, not the "responsible person" required by Code § 45.1-81(a), is charged with the responsibility of ensuring uninterrupted mine communications.

The conclusion we reach, unlike the one urged by the Department, gives reasonable effect to every word of Code § 45.1-81(a). *See Jones* v. *Conwell*, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984). Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*